Robert W. BRADLEY, Respondent
Below, Appellant,

v.

DIVISION OF CHILD SUPPORT EN-
FORCEMENT ex rel. Nancy R. PAT-
TERSON, Guardian, ad litem, for Linda
Stayton, Petitioner Below, Appellee.

Supreme Court of Delaware.

Submitted: April 24, 1990.

Decided: Oct. 11, 1990.

Rehearing Denied Nov. 2, 1990.

Joseph J. Longobardi, III of Roeberg, Haase & Associates, P.A., Wilmington, for appellant.

Sherry V. Hoffman (argued), and Peter S. Feliceangeli, Deputy Attys. Gen., Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ. (constituting the Court *en banc*).

HOLLAND, Justice:

This is an appeal from the Family Court of the State of Delaware, in and for New Castle County. Following a paternity hearing on August 29, 1988, the Family Court found that the respondent-appellant, Robert W. Bradley ("Bradley"), was the father of Nancy R. Patterson ("the Child"), who was born to Diane A. Patterson ("the Mother") on June 14, 1973.[1] The Family Court subsequently ordered Bradley to pay child support.

---

1. Pursuant to Supreme Court Rule 7(c), the names of the parties in the caption are pseudo- nyms selected by this Court.

In this appeal, Bradley argues that the Family Court erred in the 1988 paternity proceeding by rejecting his affirmative defense of *res judicata.* In support of his position, Bradley relies upon an Order[2] entered by this Court last year, which affirmed an unreported decision by the Family Court, holding that the bar of *res judicata* was applicable to successive paternity petitions. *Knight v. Saxton,* Del.Supr., 560 A.2d 489 (1989) (ORDER), affirming *Knight v. Saxton,* Del.Fam. No. G–1757, 1988, James, J., 1988 WL 151595 (Oct. 12, 1988). The appellee argues that the holding of our prior Order was erroneous.

The present matter was initially considered by a panel of this Court and then reheard *en banc* because of the reasonable likelihood that our prior Order would have to be modified or overruled, if the appellee's argument prevailed. Supr.Ct.R. 4(d). After careful consideration, we have concluded that the holding of our prior Order was correct. Accordingly, the Family Court's decision in this matter must be reversed.

### Procedural Background

On March 28, 1977, the Mother assigned and transferred all of her rights to child support to the State of Delaware. This assignment was part of an application for public assistance, under the Aid to Families with Dependent Children program ("AFDC"). 31 *Del.C.* § 504. *See Allen v. Division of Child Support Enforcement,* Del.Supr., 575 A.2d 1176, 1180 (1990). Pursuant to this assignment, the Bureau (now Division) of Child Support Enforcement ("DCSE") filed a paternity and non-support petition, on behalf of the Mother, which named Bradley as the putative father.[3]

A hearing on DCSE's petition was rescheduled twice, once at the request of both DCSE and Bradley and once at the request of DCSE. On May 25, 1978, when the hearing was finally convened, DCSE requested an additional continuance because its witness, the Mother, had failed to appear. The Family Court denied that request and proceeded with the hearing to determine the merits of DCSE's petition, alleging Bradley's paternity and non-support.

During the 1978 proceeding, both Bradley and DCSE were represented by counsel. Bradley denied that he was the father of the Child. Bradley testified that he had never had sexual intercourse with the Mother during the period of the Child's conception, i.e., August, September, or October of 1972. At the conclusion of the 1978 hearing, the Family Court dismissed DCSE's petition, alleging Bradley's paternity and non-support, with prejudice. DCSE did not appeal that judgment.

Nearly nine years later, on March 19, 1987, the Mother, who was no longer receiving public assistance, filed a petition alleging paternity and non-support, under the Uniform Reciprocal Enforcement Support Act. 13 *Del.C.* ch. 6. That petition also named Bradley as the Child's putative father. On April 29, 1987, Bradley filed an answer to the petition, in which he denied paternity and asserted *res judicata* as an affirmative defense. On August 18, 1987, a Family Court Master recommended that the Mother's petition be dismissed on the basis of *res judicata.*

On September 1, 1987, DCSE filed an appeal *de novo* from the Master's recommendation. *See* 10 *Del.C.* § 913; Fam.Ct. Civ.R. 53(d). On October 28, 1987, following a *de novo* review of the Mother's recommendation, a Judge of the Family Court ruled that the Mother's petition was not barred by *res judicata.* The Family Court Judge also ordered that blood grouping tests be performed on Bradley, the Mother and the Child. *See Allen v. Division of Child Support Enforcement,* 575 A.2d 1176; *Blake v. Division of Child Support*

---

2. "Litigants before this Court may cite Orders as precedent so long as they comply with the dictates of Rule 14(b)(vi)." *New Castle County v. Goodman,* Del.Supr., 461 A.2d 1012, 1013 (1983). *See also,* Supr.Ct.R. 17.

3. The Mother had informed DCSE that Bradley was the father of the Child. However, in a previous application for public assistance, dated March 7, 1973, the Mother swore under oath that she did not know the name of the father.

*Enforcement*, Del.Supr., 525 A.2d 154 (1987). Bradley filed a motion for reargument of that decision on November 9, 1987. In an order dated February 24, 1988, the Family Court granted Bradley's motion for reargument. The opinion noted:

> The record is clear that petitioner [the Mother] ha[d] her day in Court and the issue was decided against her. She did not take an appeal of the Court's decision and, therefore, the issue with reference to [paternity in the prior case] is *res judicata*.

After concluding that the Mother's petition was barred by *res judicata*, the Family Court dismissed her paternity petition "without prejudice to any rights of … [the] minor child to assert a claim pursuant to the statutory provisos of 13 *Del.C.*, Chapter 8."

### The Current Paternity Petition

On March 4, 1988, DCSE filed a petition, on behalf of the Child, alleging Bradley's paternity and non-support.[4] Bradley moved to dismiss the DCSE's petition on the grounds of *res judicata*. That motion was denied by the Family Court on July 22, 1988. Thereafter, on September 15, 1988, the Family Court determined that Bradley was the father of the Child. Bradley has appealed the Family Court's decision not to dismiss DCSE's petition, on behalf of the Child, on the grounds of *res judicata*.[5]

### Res Judicata

■ "Under the doctrine of *res judicata*, a judgment in a prior suit involving the same parties, or persons in privity with them, bars a second suit on the same cause of action." *Foltz v. Pullman, Inc.*, Del.Super., 319 A.2d 38, 40 (1974). In order to successfully assert the affirmative defense of *res judicata*, Bradley was required to establish that: (1) the Family Court had

jurisdiction over the subject matter of the suit and the parties to it; (2) the parties to the original action were the same as the parties, or their privies, in the case at bar; (3) the cause of action in the original action was the same as in the case at bar, or the issues necessarily decided in the prior action were the same as those that have been raised in the case at bar; (4) the issues in the prior action were decided adversely to the contention of the plaintiff or petitioner in the case at bar; and (5) the prior action was finally determined. *Rumsey Electric Co. v. University of Delaware*, Del.Super., 334 A.2d 226, 228 (1975); *Epstein v. Chatham Park, Inc.*, Del.Super., 153 A.2d 180, 185 (1959).

DCSE does not dispute that Bradley has proven four of the conditions precedent which are necessary to establish his affirmative defense. DCSE alleges that the procedural bar of *res judicata* is inapplicable to the case *sub judice* solely on the basis that the Child was not a party to the original paternity action and was not in privity with either DCSE, or her Mother. Alternatively, DCSE asserts that an application of *res judicata* to its petition on behalf of the Child should be prohibited, as a matter of public policy.

### Privity

"The concept of privity pertains to the relationship between a party to a suit and a person who was not a party but whose interest in the action was such that he [or she] will be bound by the final judgment as if he [or she] were a party." *Foltz v. Pullman, Inc.*, 319 A.2d at 41. The Child, who was a minor, was not named as a party in the original paternity and non-support action, which was filed by DCSE and decided in 1978. Accordingly, we must determine if the interest of the Child in the original paternity proceeding was such that

---

**4.** DCSE represents that it brought this petition pursuant to 42 U.S.C. Section 654(6)(A) which provides for state representation of non-welfare individuals in paternity and child support matters, upon request.

**5.** Initially, on October 17, 1988, Bradley filed an appeal from the Family Court's September 15,

1988 paternity decision with this Court. On April 17, 1989, this Court determined that the September 15, 1988 order was not final and that appeal was dismissed as interlocutory. On July 14, 1989, the Family Court entered a final order of support. Following that order, this appeal was perfected on September 5, 1989.

she should be bound by the final judgment, as if she were a party.

This Court and the United States Supreme Court have recognized that "the mother, the putative father, and the child, each have a compelling interest in an accurate determination of the parent-child relationship." *Allen v. Division of Child Support Enforcement*, 575 A.2d at 1180 (citing *Little v. Streater*, 452 U.S. 1, 13, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627 (1981)). Both Courts have also recognized that the "State has a legitimate interest in the welfare of a child born out of wedlock, who is receiving public assistance, by securing support for the child from those legally responsible through the judicial process." *Id.* at 1181. Consequently, a paternity proceeding can be initiated by the mother, the father, the child, or a public authority which is providing the child with support.

■ The private interests of the father, the mother, and the child are at stake in any paternity litigation, even one initiated by the State. *Id.* at 1180. The issue to be resolved in *any* paternity proceeding is whether the putative father is, in fact, the child's parent. Therefore, when either a mother or a public authority brings a paternity action, they are "assert[ing] the child's claim or subrogation rights derived therefrom." *Opinion of the Justices*, 131 N.H. 573, 558 A.2d 454, 458 (1989). Consequently, a mother and/or a public authority are representing the child's interests with respect to paternity and support, whether or not the child is actually made a party. *Guziejka v. Desgranges*, R.I.Supr., 571 A.2d 32, 34 (1990).

The record in this case reflects that DCSE filed the 1977 paternity petition, based upon an assignment from the Mother. As part of this assignment, the Mother was also required to assign the rights of the Child. The pertinent statute provides, in part:

> Any law of the State to the contrary notwithstanding, the application and/or receipt of public assistance under § 503(d), of this title shall act as an automatic and immediate assignment of *all rights of support* for the applicant

and/or recipient *and any dependent child.*

31 *Del.C.* § 504(a) (emphasis added). *See also, Allen v. Division of Child Support Enforcement*, 575 A.2d at 1180.

Some courts have held that the doctrine of privity would bar an action brought on behalf of a child, where a prior action by either the child's mother or a public authority authorized to bring such an action had litigated the issue of paternity. *Guziejka v. Desgranges*, 571 A.2d at 34; *Opinion of the Justices*, 558 A.2d 454. *See also*, 78 A.L.R.3d 846 (1977 and Supp.1989). Conversely, some jurisdictions have held that the doctrine of privity would not bar a subsequent paternity action on behalf of a child, because the "child's interests vary from that of the mother or a public officer and include elements which are different from those parties." *Guziejka v. Desgranges*, 571 A.2d at 34. *See also Department of Revenue v. Jarvenpaa*, 404 Mass. 177, 534 N.E.2d 286 (1989); *Johnson v. Hunter*, Minn.Supr., 447 N.W.2d 871 (1989). DCSE relies upon the rationale in the latter authorities in arguing that this Court should not find that the Child was in privity with her Mother or DCSE in the 1978 proceeding.

This Court has recognized that although the putative father, the mother and the child each have a compelling interest in a paternity proceeding, those interests are not necessarily identical. *Allen v. Division of Child Support Enforcement*, 575 A.2d at 1179–80. Nevertheless, the mother, the putative father and the child are all *directly affected* emotionally and economically, albeit differently, by the establishment of paternity or a finding of non-paternity. *Id.* at 1179. In fact, the United States Supreme Court has found that, notwithstanding their differences, the private interests which are at stake in a paternity proceeding are in equipoise. *Rivera v. Minnich*, 483 U.S. 574, 107 S.Ct. 3001, 3005, 97 L.Ed.2d 473 (1987). Thus, we are persuaded by those cases which have found a privity relationship between a mother or a public officer who brings a paternity action and the child.

The United States Supreme Court has held that "a paternity suit terminates with the entry of a final judgment that bars repeated litigation of the same issue under normal principles of civil litigation." *Id.* 107 S.Ct. at 3006. It would be contrary to the normal principles of *res judicata* to allow repetitious litigation on the issue of Bradley's paternity. The Child's interests with respect to paternity and support were actually at issue and represented in the 1978 proceeding filed by DCSE pursuant to the Mother's assignment, even though the Child was not named as a party. The doctrine of *res judicata* requires that the judgment against DCSE in the 1978 paternity proceeding be given preclusive effect and bar the subsequent paternity petition filed in this matter on behalf of the Child.

■ Alternatively, DCSE argues that, as a matter of public policy, the private interests of a child in a paternity proceeding should not be barred by *res judicata.* However, the doctrine of *res judicata* is itself primarily one of public policy and only secondarily of private benefit to individual litigants.

> It draws its strength not so much from the private advantage of the party seeking to invoke it, but its roots lie in the principle that public policy and welfare require a definite end to litigation when each of the parties [or their privities] has had a full, free and untrammelled opportunity of presenting all of the facts pertinent to the controversy.

*Coca Cola Co. v. Pepsi Cola Co.,* Del.Super., 172 A. 260, 262 (1934).

None of the public or private rights which are at stake in a paternity action become vested or extinguished until that controversy has been resolved. Irrespective of the distinctions between the totality of rights in which a child may be interested, as opposed to the rights that are sought to be enforced by a mother or a public official, the fact remains that the putative father's paternity of the child is the issue being litigated in an action initiated by any one of them. Accordingly, we conclude that once the issue of paternity has been litigated, an application of the well estab-lished principles of *res judicata,* to a subsequent paternity proceeding filed by any party in interest, is required by the public policy which that doctrine is intended to promote.

### *Delaware Parentage Act*

■ When the Family Court held that *res judicata* barred the Mother's 1987 paternity petition because of the judgment in the 1978 proceeding filed by DCSE, it dismissed her petition without prejudice to the Child's rights under 13 *Del.C.* Ch. 8. Thereafter, DCSE filed its current paternity petition on behalf of the Child. The Family Court denied Bradley's motion to dismiss the Child's petition, holding that it was authorized by 13 *Del.C.* Ch. 8, the Uniform Parentage Act, as adopted in Delaware ("Delaware Parentage Act").

DCSE acknowledges that the 1978 paternity proceeding in this matter was concluded prior to the enactment of the Delaware Parentage Act. DCSE also acknowledges that the Delaware Parentage Act did not create a new cause of action for parties who had previously litigated paternity. However, DCSE contends that the Family Court properly decided the question in the case *sub judice,* i.e., not whether a party to an earlier hearing can relitigate paternity, but whether the Child, who was not a party to the prior proceeding, can file a subsequent action to establish paternity pursuant to Delaware's version of the Uniform Parentage Act. Bradley does not disagree with DCSE's formulation of the question. Instead, Bradley argues that the Delaware General Assembly has answered the question in the negative.

The Family Court recognized that the Delaware Parentage Act is significantly different from the Uniform Parentage Act promulgated by the National Conference of Commissioners on Uniform State Laws. In particular, the Family Court noted that 13 *Del.C.* § 805(a) did not include the statute of limitations for commencing paternity proceedings, which had been suggested in the Uniform Parentage Act. 13 *Del.C.* § 805(a) provides:

*Any interested party, including the child* or his guardian; the mother or her representative, if deceased; an appropriate public agency; or a man alleged or alleging himself to be the father, or his guardian if a minor or his representative, if deceased; *may bring an action at any time for the purpose of determining the existence or nonexistence of the father-and-child relationship with respect to any child.* (emphasis added). The Family Court relied upon this section in concluding that the Child's present paternity petition was authorized by the Delaware Parentage Act.

We have carefully compared all of the provisions of the Delaware Parentage Act with their counterparts in the Uniform Parentage Act. We find that the Family Court correctly concluded that the Delaware Parentage Act has rejected the time limitations suggested by the Uniform Parentage Act for commencing a paternity proceeding. However, to the extent that the Family Court based its decision exclusively upon 13 *Del.C.* § 805(a), its analysis of the Delaware Parentage Act was incomplete.

An examination of the entire Delaware Parentage Act reflects an unambiguous intention by the Delaware General Assembly *not* to have multiple paternity proceedings, *whether or not the child is a party to the initial proceeding.* The Uniform Parentage Act provides that the child *must* be joined as a party in a paternity proceeding and prohibits the father or mother from acting as the child's guardian *ad litem.*

> The child *shall* be made a party to the action. If he is a minor he shall be represented by his general guardian or a guardian *ad litem* appointed by the court. The child's mother or father may not represent the child as guardian or otherwise.

UPA § 9 (emphasis added). However, the corresponding provision which was enacted in Delaware makes the joinder of the child, as a party in a paternity proceeding, discretionary and does not include the recommended prohibitions against the father or mother acting as the child's guardian. 13 *Del.C.* § 808, in part, provides:

The child *may* be made a party to an action under this chapter. The Court, upon proper application or on its own motion, *may* appoint a guardian ad litem for the best interest of the child. (emphasis added).

Notwithstanding the modification in the Delaware statutory scheme to make the Child's joinder as a party discretionary, the Delaware Parentage Act does include the language recommended in the Uniform Parentage Act which provides that: "[a] judgment and order of the [Family] Court determining the existence or nonexistence of the parent-and-child relationship is determinative for *all* purposes." 13 *Del.C.* § 812(a) (emphasis added). Moreover, Delaware's Parentage Act differs significantly from the Uniform Parentage Act in that it contains a provision which does not appear in the Uniform Parentage Act. The Delaware Parentage Act states:

> [A] written settlement agreement between or among the mother, the putative father and guardian ad litem for the child if one is appointed, and approved by the Court shall be final, binding and conclusive on all parties including the child, and shall operate as a final adjudication on the merits as to the issue of paternity in any subsequent action for determination of paternity, child support, custody, visitation or any other civil or criminal action in which the paternity of the child by the putative father is an element of the claim for relief.

13 *Del.C.* § 809(c).

■ The General Assembly was not required, as a matter of due process or equal protection, to afford a child an independent opportunity to *relitigate* the issue of paternity. *Michael H. v. Gerald D.,* 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). *See also, Rivera v. Minnich,* 107 S.Ct. at 3006; *Petitioner F. v. Respondent R.,* Del. Supr., 430 A.2d 1075 (1981). Delaware's modifications to the Uniform Parentage Act evidence a conscientious determination by the General Assembly to bind a child by a finding of paternity or nonpaternity in a judicial proceeding, whether or not the Child was joined as a party in the initial

action. The Family Court's conclusion that the Delaware Uniform Parentage Act permitted the Child to relitigate the issue of Bradley's paternity was erroneous, as a matter of law.

### Conclusion

The current paternity petition by DCSE, on behalf of the Child, was barred by the doctrine of *res judicata* and the Delaware Parentage Act. The decision of the Family Court is REVERSED.