**DIVISION OF CHILD SUPPORT ENFORCEMENT ex rel. Wendy BLAKE,[1] Respondent Below, Appellant,**

v.

**Travis MYRKS, Jr., Petitioner Below, Appellee.**

Supreme Court of Delaware.

Submitted: April 14, 1992.
Decided: April 30, 1992.

---

1. Pursuant to Supreme Court Rule 7(c), the names of the mother and son are pseudonyms selected by this Court.

Peter S. Feliceangeli, Dept. of Justice, Wilmington, for appellant.

Matthew P. Denn and Christine M. McDermott, Delaware Volunteer Legal Services, Wilmington, for appellee.

Before MOORE, WALSH and HOLLAND, JJ.

MOORE, Justice.

Appellant, Division of Child Support Enforcement ("DCSE"), appeals from a decision of the Family Court granting appellee's request for blood testing to determine paternity. *Myrks v. Division of Child Support Enforcement*, Del.Fam., File No. CN87–1915, 1991 WL 223740, Keil, J. (Sept. 23, 1991). Here, we confront issues of *res judicata* and the applicability of the Delaware Parentage Act ("DPA"), 13 *Del.C.*, Ch. 8, to questions of paternity. In noting the ambiguities of the DPA in this regard,

that the DPA is significantly different from the Uniform Parentage Act, and that principles of *res judicata* apply, we reverse the judgment of the Family Court.

## I.

On December 3, 1987, DCSE filed an action in the Family Court on behalf of Wendy Blake ("Mother") and against the appellee, Travis Myrks, Jr. ("Myrks"). DCSE petitioned the court to establish the paternity of Mother's son, Thomas D. Blake ("Blake"), and enter an order for support. A hearing was held in the Family Court on February 11, 1988. At the hearing, Myrks admitted paternity and the court entered a child support order against him ("Master's Order").

In April 1988, Myrks was sentenced to serve 14 years at the Delaware Correctional Center for an unrelated felony. Blake visited Myrks in jail during the summer of 1990. During the visit, Myrks noticed a lack of resemblance between he and the child. In light of the lack of resemblance and his current incarceration, Myrks filed petitions in the Family Court seeking: 1) to modify support; and 2) to determine paternity under the Delaware Parentage Act. *See* 13 *Del.C.* Ch. 8.[2]

Following a hearing in the Family Court, the Master's Order was modified with regard to support and blood tests were ordered to determine paternity. DCSE then requested a review *de novo*. At the review *de novo* hearing, DCSE argued that Myrks' petition to determine paternity was barred under the doctrine of *res judicata*. However, the trial judge held that Myrks' petition was not barred and granted his request for blood testing. *Myrks*, slip op. at 4. We accepted the case on interlocutory appeal. Accordingly, all proceedings in the Family Court have been suspended.

## II.

"On appeal from the Family Court our scope of review extends to a review of

2. The "Delaware Parentage Act is significantly different from the Uniform Parentage Act promulgated by the National Conference of Commissioners on Uniform State Laws." *Bradley v.*

*Division of Child Support Enforcement*, Del. Supr., 582 A.2d 478, 482 (1990) (citing 13 *Del.C.* Ch. 8).

the facts and law as well as to a review of the inferences and deductions made by the trial judge." *Wife (J.F.V.) v. Husband (O.W.V., Jr.),* Del.Supr., 402 A.2d 1202, 1204 (1979).

DCSE contends that Myrks' petition for a determination of paternity is barred because of the Family Court's previous finding of paternity. "Under the doctrine of *res judicata,* a judgment in a prior suit involving the same parties, or persons in privity with them, bars a second suit on the same cause of action." *Bradley v. Division of Child Support Enforcement,* Del. Supr., 582 A.2d 478, 480 (1990) (quoting *Foltz v. Pullman, Inc.,* Del.Super., 319 A.2d 38, 40 (1974)). "In order to successfully assert the affirmative defense of *res judicata,* [DCSE] was required to establish that: (1) the Family Court had jurisdiction over the subject matter of the suit and the parties to it; (2) the parties to the original action were the same as the parties, or their privies, in the case at bar; (3) the cause of action in the original action was the same as in the case at bar, or the issues necessarily decided in the prior action were the same as those that have been raised in the case at bar; (4) the issues in the prior action were decided adversely to the contention of the plaintiff or petitioner in the case at bar; and (5) the prior action was finally determined." *Id.* (citing *Rumsey Electric Co. v. University of Delaware,* Del.Super., 334 A.2d 226, 228 (1975)).

Myrks does not dispute that DCSE has proven three of the conditions precedent which are necessary to establish the affirmative defense of *res judicata.* However, Myrks argues that the procedural bar of *res judicata* is inapplicable because: 1) the issue of paternity was not previously litigated; and 2) the Master's Order was not a final judgment.

■■■ . Myrks argues that the issue of paternity was not litigated in the original action because he did not contest paternity in that proceeding. Although Myrks did not contest paternity, the procedural "bar of *res judicata* extends to all issues which might have been raised and decided in the first suit as well as to all issues that actual-

ly were decided...." *Foltz,* 319 A.2d at 40. In the previous proceeding, DCSE requested and received a determination of paternity. Moreover, this Court has held that proof of paternity is required in an action for child support. *See G.L. v. S.D.,* Del.Supr., 403 A.2d 1121, 1127 (1979). Thus, the issue of paternity was necessarily considered and determined in the original suit.

Myrks also contends that the issue of paternity can only be determined under the DPA. It is undisputed that the original determination of paternity did not comply with the provisions set forth in the DPA. Therefore, if the DPA is the exclusive means of determining paternity, the original determination was not binding and the doctrine of *res judicata* is inapplicable.

### III.

The parties cite various sections of the DPA in support of their respective positions regarding the exclusivity of the statute. From the arguments presented, one fact is clear: the language of the DPA is ambiguous regarding whether the statute was intended to be the exclusive means of determining paternity.

A review of the provisions of the DPA reveals several apparent inconsistencies. Section 803 provides that the "parent-and-child relationship between the child and ... [t]he natural father *may* be established in accordance with this chapter." 13 *Del.C.* § 803(2) (emphasis added). DCSE contends that the use of the permissive term "may", rather than the mandatory term "shall", suggests that the DPA was not intended to be the exclusive means of establishing paternity.

In contrast, Section 805 provides that paternity "[p]roceedings may be instituted in accordance with rules adopted by the Court or upon a petition in which the petitioner alleges that respondent owes a duty of support and has refused or failed to provide such support, *and thereafter the respondent asserts nonpaternity as a defense."* 13 *Del.C.* § 805(b) (emphasis added). The Family Court held that the "cir-

cumstances described in Section 805 are the only methods by which an action to establish paternity may be commenced." *Myrks*, slip op. at 3. Following this interpretation, a determination of paternity in conjunction with a support order would only be binding if the putative father asserted nonpaternity as a defense.

However, Section 812(a) provides that a "judgment and order of the Court determining the existence or nonexistence of the parent-and-child relationship *is determinative for all purposes.*" 13 *Del.C.* § 812(a) (emphasis added). In addition, "the judgment and order may contain any other provision directed against the appropriate party to the proceeding pursuant to Chapters 5 and 7 of this title, including the duty of support...." 13 *Del.C.* § 812(c). Thus, it would appear that a determination of paternity made in conjunction with a support order, as here, would be determinative for all purposes.

As is evident from the preceding analysis, the language of the DPA provides no clear indication regarding whether the statute was intended as the exclusive means of establishing paternity. Moreover, the parties' reliance on various provisions of the DPA is misguided because it is necessary to consider the statute as a whole rather than isolated provisions. *See Bradley*, 582 A.2d at 483 ("to the extent that the Family Court based its decision exclusively upon 13 *Del.C.* § 805(a), its analysis of the Delaware Parentage Act was incomplete").

## IV.

 In light of the ambiguities in the language of the DPA, this Court has a duty to search for the underlying legislative intent. *See A & P Stores v. Hannigan*, Del.Supr., 367 A.2d 641, 643 (1976). In *Bradley*, this Court held that "[a]n examination of the entire Delaware Parentage Act reflects an unambiguous intention by the Delaware General Assembly *not* to have multiple proceedings...." *Bradley*, 582 A.2d at 483. Although *Bradley* dealt with whether a child who was not a party to the original paternity proceeding could bring a subsequent paternity suit, the intent of the legislature to avoid multiple paternity proceedings applies equally to this case. Moreover, in *Bradley*, we held that a determination of paternity, which was not made pursuant to the DPA, barred a subsequent petition to determine paternity under the DPA. *See id.* at 479–84.[3]

If this Court were to interpret the DPA as the exclusive method of determining paternity, all findings of paternity made in conjunction with child support proceedings would be nonbinding and subject to attack at a later time. Such an interpretation would clearly frustrate the legislative intent of avoiding multiple paternity proceedings. This leads us to the conclusion that the DPA is not the exclusive means of establishing paternity. Accordingly, the determination of paternity in the Master's Order is binding and the doctrine of *res judicata* is applicable.

 Myrks also contends that allowing him to admit paternity rather than complying with the DPA violates his due process rights.[4] This argument is without merit. Myrks admitted paternity in court and his admission was implicitly approved

---

**3.** Myrks correctly points out that the original determination of paternity in *Bradley* was made before the DPA was enacted. However, the fact remains that this Court found the original non-DPA determination to be binding. In the absence of clear language to the contrary, this Court will not interpret the DPA as revoking the Family Court's ability to determine paternity in accordance with procedures established before the statute's enactment. Accordingly, a determination of paternity by the Family Court, although not made pursuant to the DPA, will be binding.

**4.** This Court has held that "there is no constitutional guarantee to the appointment of counsel prior to the time tests are given" to determine paternity. *Blake v. Division of Child Support Enforcement*, Del.Supr., 525 A.2d 154, 157 (1987). In *Allen v. Division of Child Support Enforcement*, Del.Supr., 575 A.2d 1176 (1990), we held that in a State-initiated paternity case, an indigent, incarcerated putative father has a due process right to appointed counsel if, after blood testing, he has not been excluded and continues to dispute paternity. At the time Myrks admitted paternity he was neither indigent nor incarcerated. Thus, it is clear that Myrks was not entitled to appointed counsel.

by that court. Under the DPA, a putative father may enter into a written agreement which must be approved by the Court. *See* 13 *Del.C.* § 809(c). Myrks offers no support for his tenuous argument that a written agreement is constitutionally permissible, whereas an admission of paternity before the court violates due process. Accordingly, Myrks' argument must be rejected.

■ Finally, Myrks contends that the Master's Order was not a final judgment because it could be subsequently modified if the parents' economic circumstances or the needs of the child change. *See* 13 *Del.C.* § 513(d). We disagree. Although the Family Court may modify support payments in light of a change in circumstances, the initial determination of paternity is not subject to later modification. In addition, DCSE explicitly requested and received a determination of paternity in the original proceeding. The fact that the Family Court's determination of paternity was made in conjunction with a request for support does not alter its finality. *See* 13 *Del.C.* § 812(c).

In conclusion, the determination of paternity in the original proceeding satisfied all of the criteria necessary to establish the affirmative defense of *res judicata.* Therefore, Myrks' petition to determine paternity is procedurally barred.

The decision of the Family Court is

REVERSED.