668 So.2d 566 (1995)
Ex parte STATE of Alabama ex rel. J.Z.
(Re Ex parte State of Alabama ex rel. J.Z., etc.).
1940456.
Supreme Court of Alabama.
May 12, 1995.
William Prendergast and Mary E. Pons, Asst. Attys. Gen., Department of Human Resources, for Petitioner.
J.S.T., pro se.
HORNSBY, Chief Justice.
This case arises from a 1981 judgment determining paternity of a minor child. There is no transcript of the hearing on which the trial court based its decision. We adopt the statement of facts set out by the Court of Civil Appeals:
"The scant record in this case reveals that on January 13, 1981, a default judgment was entered, adjudging J.S.T. to be the father of S.S.Z., a minor child, based upon the affidavits of the mother, J.Z., and a social worker for the Colbert County Department of Pensions and Security.
"On July 8, 1993, the State of Alabama, on behalf of J.Z., filed a petition for writ of ne exeat. On August 11, 1993, J.S.T. filed an answer and defenses to the petition.... J.S.T. also filed a Rule 60(b)(6) [Ala.R.Civ. P.,] motion to set aside the January 13, 1981, default judgment of paternity, alleging that he had requested a blood test but that the mother failed to appear for the test; that he had been incarcerated on the date of the trial in 1981; that he did not have actual knowledge of the default judgment of paternity until 1992, when he received notice of a tax refund offset for a child support arrearage; that he immediately responded to the notice of the tax refund offset by denying paternity; and that he denied that he had ever acknowledged paternity of the minor child. J.S.T. also filed a motion for blood tests. Following an ore tenus proceeding on August 26, 1993, the trial court entered an order on September 20, 1993, which states, in pertinent part, as follows:
"`The matters now pending before the Court in this cause are: a Petition for Writ of Ne Exeat filed by the State; Answer and Defenses of [J.S.T.] to Petition for Writ of Ne Exeat; [J.S.T.]'s Motion to Set Aside Previous Adjudication of Paternity; and Defendant's Motion for Blood Tests.

*568 "`This case began with the arrest of [J.S.T.] on a Bastardy Warrant issued on November 4, 1980. On December 16, 1980, the case was continued to January 13, 1981, to allow time for a blood test to be taken. On January 13, 1981, [J.S.T.] did not appear for court and a default was entered in which [J.S.T.] was found to be the father of S.S.Z., based upon the sworn affidavit of the child's mother. [J.S.T.] was ORDERED to pay $25.00 per week child support. The case lay dormant until the Petition for Writ of Ne Exeat was filed on July 8, 1993.
"`On August 26, 1993, the Court held a hearing on the matters currently pending before the Court....
"`Based upon the evidence presented at the hearing and the Court's application of existing law to that evidence the Court finds that extraordinary circumstances exist which warrant relief from the previous paternity adjudication. A partial list of these extraordinary circumstances is as follows:
"`1. The paternity judgment in the original case is a default judgment. [J.S.T.] had requested a blood test. The blood test was never accomplished apparently through no fault of [J.S.T.]. When [J.S.T.] failed to appear in court he did so because he was incarcerated by another court.
"`2. There is substantial reason to believe that [J.S.T.] did not know he had been adjudicated the father of the child until a Tax Offset was served on him in 1992. At that time [J.S.T.] immediately began taking steps to deny paternity. This same [mother] and [J.S.T.] were before this Court in 1993 in a separate Paternity and Support Case and no issue was raised about [J.S.T.'s] delinquent support obligation in this case. [J.S.T.] remained in Alabama from 1983 to 1987 then lived in Michigan from 1987 to February 1991. [J.S.T.] was again incarcerated in Alabama from February 1991 to October 1991. No action against [J.S.T.] for delinquent support was ever taken by the State or the [mother] prior to the 1992 Tax Offset.
"`3. The argument that [J.S.T.] has deliberately hidden to avoid his obligation in this case appears to be without merit.
"`4. There is no evidence that [J.S.T.'s] failure to re-litigate paternity in this case was from a lack of due diligence.
"`5. There is no evidence that [J.S.T.] ever made a deliberate choice not to question paternity.
"`6. There appears to have been no reliance of the mother and child on the paternity adjudication. [J.S.T.] had never made a support payment until threatened with jail by the pending Ne Exeat.
"`It is, therefore, ORDERED AND DECREED that the State's Petition for Writ of Ne Exeat is hereby denied, the sureties on the bond are hereby released and the parties are ORDERED to submit to blood test at [J.S.T.]'s expense.
"`This matter will remain pending until testing and discovery is completed and the case is ready for trial.
"The State, on behalf of J.Z., filed a petition for a writ of mandamus on December 14, 1993, requesting this Court to instruct the trial judge to withdraw his order for blood tests and to issue an order reaffirming the January 13, 1981, default judgment of paternity."
Ex parte State of Alabama ex rel. J.Z., 668 So.2d 561, 561-63 (Ala.Civ.App.1994) (emphasis added by the Court of Civil Appeals).
The Court of Civil Appeals denied the State's petition for the writ of mandamus, holding that "[A] ruling on a Rule 60(b), Ala.R.Civ.P., motion will not be disturbed by an appellate court except where the trial court's decision constituted an abuse of discretion." 668 So.2d at 563, citing New Image Industries, Inc. v. Rice, 603 So.2d 895 (Ala. 1988). The Court of Civil Appeals further explained, "[W]e cannot hold that the trial court's decision constituted such an abuse of discretion as to warrant the issuance of a writ of mandamus." 668 So.2d at 563. The *569 Court of Civil Appeals denied the State's application for rehearing. We granted the State's petition for certiorari review.
The State renews here its argument that the trial court erred in reopening the 1981 judgment pursuant to J.T.'s Rule 60(b)(6) motion. The State's argument is based on the doctrine of res judicata and what it contends was an unreasonable delay between the entry of the default judgment adjudicating the question of paternity and the filing of the Rule 60(b)(6) motion. We reverse and remand.
Although the trial court has not yet ruled on the Rule 60(b) motion for relief from the default judgment, the issue remains whether it abused its discretion in reopening the 1981 adjudication of paternity for further litigation. The trial court ordered that J.Z., J.T., and the minor child undergo blood tests and that the "matter [would] remain pending until testing and discovery is completed and the case is ready for trial." Therefore, the trial court simply reopened litigation of a matter that had been dealt with in a final judgment 12 years before. We note that the trial court's discretion is constrained by this Court's stated policy on the finality of paternity judgments and the doctrine of res judicatathe rules of law applicable in this case. Caudle v. Ellison, 401 So.2d 38 (Ala.1981). Therefore, our analysis is whether, in light of the applicable law, there was a legal basis for the trial court to reopen the earlier litigation.
Mandamus is a proper remedy for preventing injustice and preventing an irreparable injury when there is no other adequate remedy at law. Ex parte Hartwell, 238 Ala. 62, 188 So. 891 (1939). However, the writ of mandamus is an extraordinary remedy, to be employed to see that justice is done, and it shall not issue if there is a doubt as to its necessity or propriety. Ex parte Garrison, 260 Ala. 379, 71 So.2d 33 (1954). The writ of mandamus should be reserved for truly extraordinary situations and circumstances. Belcher v. Grooms, 406 F.2d 14 (5th Cir.1968). To justify the issuance of the writ, the petitioner must make a clear showing of injury. Ex parte Cox, 451 So.2d 235 (Ala.1985); Ex parte Jones, 447 So.2d 709 (Ala.1984).
In light of the trial court's action, we consider whether reopening a 12-year-old final judgment on the facts of this case constitutes such an extraordinary circumstance as to warrant granting the State's petition for the writ of mandamus. We acknowledge that paternity actions might reveal circumstances that could serve as a justification for reopening litigation, even given the rules of res judicata and the general interest in finality. However, we must approach all issues regarding the reopening of such long-settled judgments in the light of the strong arguments in favor of finality of a prior judgment. The policy in favor of finality means that a prior adjudication should not be subject to relitigation in the absence of truly compelling circumstances. Accordingly, this Court will not carve out a general exception to the rule that judgments adjudicating paternity should be subject to the ordinary rules of finality, but we must consider the particular circumstances of each case. The analysis will be to determine whether the doctrine of res judicata appears to bar reopening the litigation, and, if so, whether the facts of the case present those "rare circumstances" that would serve as a basis for granting a Rule 60(b) motion.
In regard to such cases, this Court has explained the importance of the doctrine of res judicata:
"The doctrine of res judicata prevents the same parties from relitigating issues determined by a court of competent jurisdiction. Although this doctrine could preclude a party from showing what is or could be the truth, the interest of putting an end to controversies after a fair and thorough hearing generally outweighs the factfinding interest after the time for appeal has lapsed, except in rare circumstances."
Ex parte W.J., 622 So.2d 358, 360 (Ala.1993). In W.J., the Court also explained that Rule 60(b) establishes grounds for relief in judgments. Therefore, in extraordinary and rare circumstances, final judgments in paternity actions may be reopened. Because it is undisputed that there was a final ruling in 1981 regarding this paternity issue, the question *570 becomes whether J.T. has presented "rare circumstances" that would justify Rule 60(b) relief.
Rule 60(b) reads as follows:
"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four months after the judgment, order or proceeding was entered or taken."
We address all possible avenues that could be pursued according to Rule 60(b). First, the rule plainly states that reasons (1), (2), and (3) may not be grounds for relief unless the motion is made within four months after the judgment is entered. Therefore, in the present case, an argument that there was a "mistake" with regard to determining the biological father, or that the blood test would reveal "newly discovered" evidence, is without merit. As previously stated, the default judgment had been entered 12 years before J.T. filed a Rule 60(b) motion.
Provisions (4) and (5) of the Rule are plainly inapplicable, so the only other possible avenue for relief pursuant to Rule 60(b) is that there was some "other reason justifying relief." Rule 60(b)(6). Therefore, the critical inquiry is whether there is some justifiable reason other than those reasons set out in (1), (2), and (3).
It should be noted at the outset that the comments to Rule 60 state that the basis for relief provided in Rule 60(b)(6) is mutually exclusive of the five specific grounds for relief listed in (b)(1) through (5). United States v. Karahalias, 205 F.2d 331 (2d Cir. 1953). This Court has held that a Rule 60(b)(6) motion must be based on some reason other than those reasons stated in (1) through (5). Adams v. Farlow, 516 So.2d 528 (Ala.1987), cert. denied, 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988).
J.T.'s only legitimate argument is that a blood test would prove he is not the biological father. However, blood test results contradicting the trial court's 1981 judgment would constitute "newly discovered evidence," which is set out in (2) as a grounds for relief. This allegation is not "mutually exclusive" of the grounds set out in (1) through (5).
J.T. has further argued that because of his incarceration he did not know until 1992 that the trial court had ruled that he was the biological father. However, J.T. was aware of the pending paternity action and of his right to litigate that action. It is undisputed that J.T. appeared at, and participated in, the initial paternity hearing. In fact, J.T. arranged at the initial hearing to have blood tests conducted, but failed to follow through with the procedures. While being incarcerated might have made it more difficult for J.T. to follow his case, the facts here show no indication that J.T. made any effort to discover the result of the hearing. Being incarcerated did not foreclose legal remedies that would have been available to J.T., such as a Rule 55(c), A.R.Civ.P., motion to set aside the default judgment, or a direct appeal. J.T. could have availed himself of these or other remedies, whether or not he was incarcerated. Furthermore, from 1983 until 1991, J.T. was not incarcerated. However, he took no steps to reopen the paternity adjudication until the mother of the minor child took legal action against him. In short, J.T.'s argument that his incarceration was the reason he was unable to pursue legal remedies afforded him is without merit. Therefore, under the circumstances of this case, lack of *571 knowledge of the judgment is not a legitimate "other reason" under Rule 60(b)(6).
Moreover, a Rule 60(b)(6) motion is also limited by the requirement that it be made within a "reasonable time." Some considerations for determining what constitutes a "reasonable time" are as follows: the interest in finality, the reason for delay, the practical ability to learn earlier of the grounds relied upon, and the prejudice to the other parties. Adams, supra. The blood test that J.T. requested of the trial court in 1993 could have been conducted in 1980. His initial request shows that from the beginning of the paternity action J.T. doubted he was the father. However, he never underwent the test, and he presents no meritorious reason for his failure to do so. As stated above, although J.T. was periodically incarcerated and although J.Z. did not attempt to compel child support payments before 1993, J.T. "slept" on his rights to ascertain whether he was truly the child's biological father. As Judge Thigpen explained in his dissent to the opinion of the Court of Civil Appeals, "It is well settled that a party, even one acting pro se, is responsible for keeping track of his own case and knowing the status." 668 So.2d at 564. Judge Thigpen further explained:
"Had J.S.T. responsibly followed the course of the paternity proceeding after he initially appeared in 1980, he might have been able to obtain relief pursuant to a timely post-judgment motion or appeal. [Rebel Oil Co. v. Pike, 473 So.2d 529 (Ala. Civ.App.1985)]. The law does not permit a party, such as J.S.T., to appear and participate in legal proceedings, then later escape liability by failing `to keep up with the progress of his case.' State v. Woodham, 276 Ala. 662, 664, 166 So.2d 391, 393 [(1964)]."
668 So.2d at 564.
Further, Rule 60(b)(6) relief is available only in those exceptional circumstances when the party seeking relief can show the court sufficient equitable grounds entitling him to relief. Relief is granted only in the most extraordinary and compelling circumstances. Self v. Maynor, 421 So.2d 1279 (Ala.Civ.App.1982).
Based on these facts, we hold that J.T. has not demonstrated "rare" or "compelling" circumstances sufficient to warrant Rule 60(b)(6) relief. This holding is supported by existing Alabama case law. The underlying issue in W.J., supra, is very similar to the issue in this case. W.J. was adjudicated to be the biological father of G.J.'s child in 1981, and was order to pay $20 a week in child support. In 1990, W.J. petitioned the juvenile court to modify or set aside the 1981 order, based on a DNA probe analysis that concluded that he could not be the father of the child. The juvenile court set aside the 1981 judgment. On appeal, the Circuit Court of Russell County excluded the DNA test results on the basis that they lacked an evidentiary foundation, and it ordered the mother, the child, and W.J., to undergo human leukocyte antigen ("HLA") blood tests. The tests indicated that W.J. could not be the father. An advisory jury determined, based on all the facts, that W.J. was not the father of G.J.'s child. Therefore, the trial court granted Rule 60(b) relief and set aside the 1981 judgment and the child support order. The Court of Civil Appeals reversed the ruling, holding that the doctrine of res judicata barred relitigation of the paternity issue. This Court affirmed that reversal, based on this doctrine of res judicata and on the unreasonableness of the delay between the entry of the 1981 judgment and the filing of the Rule 60(b) motion.
The Court in W.J. discussed the potential relief available through Rule 60(b) in situations where "rare circumstances" were present. However, the Court stated that W.J.'s case presented no rare circumstances, because he had waived his rights during the 1981 adjudication. The W.J. Court held, "Because W.J. failed to appeal the 1981 judgment, and because he failed to seek relief from that judgment pursuant to Rule 60(b)(6) within a reasonable time, ... W.J.'s motion was untimely filed and should not have been considered by the trial court." 622 So.2d at 362. Just as with J.T. in the present case, W.J. was aware of the allegation of paternity and doubted that he was the father of the child. W.J., like J.T., understood that he could undergo a blood test to resolve his *572 doubt as to paternity. However, W.J. signed an agreement with the mother admitting that he was the father of the child and agreeing to pay $20 a week in child support. This Court held that with due diligence W.J. could have discovered that he was not the biological father in time to pursue a post-judgment remedy. Id. Similarly, J.T. could have pursued a blood test in 1980, during the original paternity proceedings.
In W.J., this Court cited cases from numerous jurisdictions to establish the broad national support for finality of paternity adjudications. See W.J., 622 So.2d at 362-63. A subsequent survey shows a number of additional cases to the same effect. See J.D. v. E.W., 610 N.E.2d 289 (Ind.App.1993) (holding that the trial court erred by not dismissing a second paternity case, based on the doctrine of res judicata, reasoning that the second claim was precluded because a court of competent jurisdiction had entered a judgment on the merits on the issue and that the parties in interest were the same); Wilson v. Wilson, 16 Kan.App.2d 651, 827 P.2d 788 (1992) (holding that because a man had known for six years that he was probably not the father, he had not met his duty to act within a reasonable time); Jeffries v. Jeffries, 840 S.W.2d 291 (Mo.Ct.App.1992) (holding that a man was estopped to deny paternity one year after the dissolution of his marriage; a child had been born two years before the marriage, but had been treated and cared for as if the birth had occurred during the marriage); Steioff v. Steioff, 833 S.W.2d 94 (Tenn.Ct.App.1992) (holding that the trial court, at a child support hearing, correctly denied blood tests, because the father did not request the tests during the initial appearance when paternity was at issuethe court reasoned that the man had had knowledge that he was probably not the father and had had a duty to take timely steps to protect his interest); and Office of Recovery Services v. V.G.P., 845 P.2d 944 (Utah App.1992) (holding that the question of paternity was res judicata where the man originally had agreed that he was the father, but had later attempted to litigate the paternity issue). We note further that many states have required a similar result by statute. See, e.g., Clay v. Clay, 397 N.W.2d 571 (Minn.App.1986) (holding that pursuant to the Uniform Parentage Act a presumption of paternity is conclusive when the child is three years old); Division of Child Support Enforcement ex rel. Blake v. Myrks, 606 A.2d 748 (Del.Supr.1992) (prior admission of paternity in a child support proceeding is res judicata, and the putative father was not denied due process by the fact that he could not avail himself of blood testing under the Delaware Uniform Parentage Act); and In re K.B., 490 N.W.2d 715 (N.D. 1992) (discussing the five-year statute of limitations for bringing an action under the Uniform Parentage Act for declaring the nonexistence of a statutorily presumed father and child relationship).
As we acknowledged in W.J., "in other cases facts may present exceptional circumstances for which Rule 60(b)(6) relief might be available"; however, as in W.J., "unreasonable delay" bars relief in this case. W.J., 622 So.2d at 363. Therefore, we conclude that the trial court erred in the ordering blood tests and reopening the final adjudication of paternity for further litigation. The trial court's error in this respect constituted a sufficient basis to warrant granting the State's mandamus petition. Accordingly, we reverse the judgment of the Court of Civil Appeals denying the State's petition for the writ of mandamus, and we remand this cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SHORES, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
MADDOX and HOUSTON, JJ., dissent.
HOUSTON, Justice (dissenting).
I dissent. See Ex parte W.J., 622 So.2d 358, 363-64 (Ala.1993) (Houston, J., dissenting).
MADDOX, J., concurs.