THIGPEN, Judge,
dissenting.
Some of my concerns regarding the ultimate outcome of this case may be beyond proper consideration on appeal because of its procedural posture.
I do not believe that a distinction exists which would allow this father to assert non-paternity as a defense some eleven years after a valid paternity adjudication when a motion pursuant to Rule 60(b)(6), A.R.Civ.P. could not have been properly entertained. The record is clear that this father deliberately chose to acknowledge paternity in 1983, in spite of his question at that time whether he was in fact this child’s biological father. In 1994, the father admitted that rather than paying approximately $300 for blood tests in 1983, he chose to accept the legal and financial responsibility for the duration of the child’s minority by acknowledging paternity. While choosing to accept the legal and financial responsibility for another human being for approximately twenty years seems to me to be an illogical choice, rather than paying for blood tests to determine the truth, nevertheless, that was a deliberate choice by this father over a decade ago. It has always been the law that such choices are binding. Ex parte W.J., 622 So.2d 358 (Ala.1993); Ex parte State ex rel. Edwards, 603 So.2d 366 (Ala.1992); Ex parte State ex rel. Milton, 598 So.2d 914 (Ala.1992); Ex parte State ex rel. Harrell, 588 So.2d 868 (Ala.1991); see also Ex parte State ex rel. J.Z., 668 So.2d 566 (Ala.1995); Ex parte State ex rel. V.E.T.P., *623 646 So.2d 551 (Ala.1993); Ex parte State ex rel. G.M.F., 623 So.2d 722 (Ala.1993); and Edwards v. Smith, 651 So.2d 34 (Ala.Civ.App.1994). I do not believe that Ala.Code 1975, § 26-17A-1, was designed to relieve a man from a deliberate and calculated choice he made years earlier, simply because he is now unwilling to pay further support. That interpretation effectively overturns well-settled legal precedent. See for example, Ex parte W.J., 622 So.2d 358 (Ala.1993); Ex parte State ex rel. Harrell, 588 So.2d 868 (Ala.1991); Ledbetter v. Ledbetter, 628 So.2d 655 (Ala.Civ.App.1993); and Powers v. State, 622 So.2d 400 (Ala.Civ.App.1993).
In this case, as in numerous others, the putative father deliberately chose to acknowledge paternity and to support a child that “might” be his biological child rather than seek the truth when the opportunity was provided. Several years later, when the child’s needs increased, the father did not want to continue his legal responsibility, and he sought to be relieved of his earlier choice. While the majority correctly notes that the father raised non-paternity as a defense to the modification petition, the record also reveals that, simultaneously, he filed a counterclaim seeking to have the eleven-year-old paternity adjudication re-opened to allow him the opportunity to present evidence to be relieved of that judgment. Although the trial court granted his relief, the law does not allow this. Ex parte State ex rel. J.Z., 668 So.2d 566 (Ala.1995); see also Ex parte State ex rel. Harrell, 588 So.2d 868 (Ala.1991); Ex parte State Department of Human Resources, 621 So.2d 1345 (Ala.Civ.App.1993); and Ex parte State ex rel. G.S., 591 So.2d 890 (Ala.Civ.App.1991).
Once the father obtained the results of blood tests, he then amended his answer and counterclaim and filed a petition seeking to be relieved of the 1983 paternity adjudication. In other words, it appears to me that the trial court’s error in reopening the ease for blood testing provided the father with the scientific evidence he needed to legally petition to reopen the paternity adjudication, pursuant to Ala.Code 1975, § 26-17A-1.
The procedural posture of this case has allowed an adjudicated father to obtain the proof he voluntarily chose to abandon over a decade ago in order to now be relieved of his deliberate choice to assume the legal and financial responsibility for this child. In the intervening years between the initial paternity adjudication and the setting aside of that order, the father’s financial responsibility for this child has been an issue before the trial court on other occasions, and it appears that there have been collections via the income withholding order and a tax offset. The child’s testimony also indicates her reliance on the prior paternity adjudication that E.W. is her father.
It appears to me that the recent trend regarding the reconsideration of prior paternity adjudications has been to focus on the adjudicated father rather than the psychological, emotional, and financial damages to the child. Previously, in cases involving the welfare of a child, the polestar utilized by the trial and appellate courts of Alabama had always been the best interest of the child. That principle has been applied equally in protecting the illegitimate offspring from illicit sexual unions. See Jones v. Williams, 592 So.2d 605 (Ala.Civ.App.1991); and Department of Pensions & Security v. Hornbuckle, 336 So.2d 1372 (Ala.Civ.App.1976). Cases such as the case sub judiee seem to violate that long-standing principle by allowing an adult to revoke an earlier choice when that revocation is clearly contrary to a child’s best interest and evidence may have been lost or destroyed in the interim.
While I concurred only in the result of the holding that Ala.Code 1975, § 26-17A-1, was not unconstitutional for the reasons raised on appeal in K.M. v. G.H., 678 So.2d 1084 (Ala.Civ.App.1995), I did so fearing that such a decision might serve to open the floodgates for cases such as the instant appeal. KM., supra, did not interpret that statute to establish the right of at-will revocation of one’s deliberate choice to assume the legal and financial responsibilities of a child’s legal father. That case merely considered specific constitutional challenges to the statute and did not address whether one who deliberately chooses to accept the responsibilities of a legal father may later utilize the statute to rescind his choice, thus excusing himself *624 from the responsibilities of his earlier choice, regardless of any consequences to the child.
I agree with the majority’s rationale that when one has scientific proof that excludes any possibility that he is a child’s biological father, it seems unfair to require him to assume the legal and financial responsibility for that child throughout the child’s minority. It appears to me, however, that when one, as here, has voluntarily chosen to accept legal and financial responsibility for a child in the face of his own doubts of that child’s paternity, he has chosen to accept the responsibilities of that child’s legal father regardless of biological concerns. The choice to assume the legal and financial responsibilities of a child is not a matter to be taken lightly, nor is it something to be cast aside when one grows tired of the responsibilities of his deliberate choice. Ex parte Lipscomb, 660 So.2d 986 (Ala.1994); see Kernop v. Taylor, 628 So.2d 707 (Ala.Civ.App.1993), on remand, 644 So.2d 971 (Ala.Civ.App.1994); see also Pruitt v. Pruitt, 669 So.2d 931 (Ala.Civ.App.1995); and Percer v. Percer, 370 So.2d 308 (Ala.Civ.App.1979). An adjudicated father is more than a mere unobligated volunteer, such as a step-parent, who may legally abandon the responsibility of a spouse’s minor children that the stepparent has not adopted. See Newman v. Newman, 667 So.2d 1362 (Ala.Civ.App.1994), writ quashed [August 25, 1995]; Deal v. Deal, 545 So.2d 780 (Ala.Civ.App.1989).
To allow that statute to be utilized to entitle one to this result casts uncertainty on the validity and finality of thousands of paternity judgments now in existence, notwithstanding the uncertainty it casts upon the children involved. It appears to me that the time has come for the recognition and identification of the distinctions between a legal father and a biological father and the rights and responsibilities that flow from those relationships.