Hillsborough
No. 86-168

EASTERN MARINE CONSTRUCTION CORPORATION

v.

FIRST SOUTHERN LEASING, LTD.

April 3, 1987

*Follender, Connors & Wacks,* of Nashau (*Richard C. Follender* on the brief and orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton,* of Manchester (*Richard S. Snierson & a.* on the brief, and *James R. Muirhead* orally), for the defendant.

JOHNSON, J. This is an appeal brought by plaintiff Eastern Marine Construction Corporation (Eastern Marine) from the dismissal of its action for damages and attorneys' fees and costs against the defendant First Southern Leasing, Ltd. (First Southern). The complaint alleged interference with contractual relations, negligence, wrongful attachment and abuse of process in connection with the issuance of certain notices of mechanics liens by the defendant. The Trial Court (*Goode,* J.) ruled that because the facts and issues involved in the suit had been litigated in an earlier proceeding between the parties, Eastern Marine's suit was barred under the

doctrines of res judicata and collateral estoppel. The court further held that the plaintiff's claim for wrongful attachment failed to state a cause of action. We affirm.

The plaintiff is a construction company engaged as a contractor in several construction projects in New Hampshire. It employed North American Rental, Inc. (North American) as a subcontractor to perform site preparation on these projects. In performing its work, North American used equipment leased from the defendant, First Southern, which is a North Carolina corporation engaged in the business of leasing all types of equipment, including heavy construction equipment.

Between December 5, 1984, and May 15, 1985, First Southern entered into eleven leases with North American, under which it leased to North American eleven pieces of heavy construction equipment. Beginning in late spring 1985, and continuing into the summer of 1985, North American fell behind in making its lease payments to First Southern. By August 8, 1985, North American had defaulted on all eleven leases, and owed First Southern $41,446.20 in unpaid lease obligations. Accordingly, on August 8, 1985, First Southern exercised its rights under the leases to terminate the leases and take possession of the equipment.

In a preliminary effort to secure payment of the $41,446.20 debt, First Southern gave notice to the owners of each of the three projects on which North American was working, pursuant to RSA 447:1 through RSA 447:12-a, that it intended to claim a mechanic's lien on "the real estate comprising each of the projects . . . and the structures and buildings thereon and the improvements and appurtenances thereto," for the amounts due it from North American.

On August 21, 1985, the plaintiff brought an equity action in the superior court, alleging that the notices of mechanic's lien and account were "improper, illegal and defective," and asked for an award of attorneys' fees and for "such further relief as this court deems just and fair."

On August 27, 1985, the court issued a preliminary order "dissolving" the notices of mechanic's lien "without prejudice to reinstate those liens pending a hearing on the merits at the request of First Southern Leasing, Ltd." First Southern made such a request, and on November 1 the court reaffirmed its earlier order, after which First Southern withdrew each of the notices of mechanic's lien. Thus, the defendant's "push" never became a "shove;" no real estate was ever attached, and no writ of attachment was ever issued, served or recorded in the registry of deeds.

On November 13, 1985, Eastern Marine filed a motion for attor-

neys' fees and costs, which alleged that the defendant had acted in an oppressive, vexatious, arbitrary, unjust and obstinate manner in asserting its liens. This motion was denied, the court finding that First Southern acted in good faith and did not issue the three notices of mechanic's lien to harass or delay, or with frivolity. First Southern having complied with the court's order dissolving the liens, the court dismissed the suit on December 24, 1985.

Eastern Marine brought a second suit against First Southern on February 4, 1986, again seeking attorneys' fees, but adding requests for damages. In this suit, the plaintiff alleged interference with contractual relations, negligence, wrongful attachment, and abuse of process. All of these claims derived from First Southern's issuance of the notices of mechanic's liens. First Southern responded with a special plea of bar. After a hearing, the court ruled that the plaintiff's second suit was barred under the doctrines of res judicata and collateral estoppel. The court futher held that the wrongful attachment claim failed to state a cause of action. The defendant's appeal raises the following question for our review: whether the doctrine of res judicata bars actions at law for interference with contractual relations, negligence, wrongful attachment, and abuse of process where these claims are based upon the same transaction involved in a previous suit between the parties.

■■ "Spurred by considerations of judicial economy and a policy of certainty and finality in our legal system, the doctrines of res judicata and collateral estoppel have been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end." *Bricker v. Crane*, 118 N.H. 249, 252, 387 A.2d 321, 323 (1978) (citing *University of New Hampshire v. April*, 115 N.H. 576, 578, 347 A.2d 446, 449 (1975); RESTATEMENT (SECOND) OF JUDGMENTS ch. 3 § 48, Comment *a* (Tent. Draft No. 1, 1973)). The essence of the doctrine of res judicata is that "a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action." *Id.* at 252–53, 387 A.2d at 323 (quoting *Concrete Constructors, Inc. v. The Manchester Bank*, 117 N.H. 670, 672, 377 A.2d 612, 614 (1977)).

In *Bricker*, this court held that res judicata was not applicable where the second suit was brought under a new theory of relief. Instead, the court applied collateral estoppel, or "issue preclusion," noting:

"The plaintiff's present action for the tortious interference with a contractual relation proceeds upon a different

cause of action from his former claim that the decision not
to reappoint him was arbitrary, capricious and unreason-
able. . . . The defendants must therefore rely on collateral
estoppel, and our inquiry must be directed to the prior
suit to determine whether the question now raised was
directly in issue and actually tried."

*Bricker, supra* at 253, 387 A.2d at 323–24 (citations omitted).

██ Thus a crucial question in determining whether to apply
res judicata or collateral estoppel is always whether the action
brought in the second suit constitutes a different cause of action
than that alleged in the first suit. In the instant case, Eastern
Marine sought equitable relief to remedy irreparable harm in its
first action and to compensate it for attorneys' fees and costs. In the
second, it raised four actions at law, based upon wrongful interfer-
ence with contractual relations, negligence, wrongful attachment
and abuse of process. Whether the plaintiff is barred from raising
these theories in its second suit under the doctrine of res judicata
depends upon our approach to the question of what constitutes a
"cause of action" for res judicata purposes. In this case, we choose to
expressly follow what we consider to be the modern and better
view, and hold that the term "cause of action" means the right to
recover, regardless of the theory of recovery. A theory of recovery
therefore must be pleaded, or be subject to bar. *See* RESTATEMENT
(SECOND) OF JUDGMENTS ch. 3 §§ 24, 25 (1980). We therefore reject
the view that the term is synonymous with the particular legal the-
ory in which a party's claim for relief is framed. To the extent that
*Bricker v. Crane* is inconsistent with the modern view, it is disap-
proved.

██ The narrow approach to "cause of action" as connotative of a
single pristine legal theory harkens back to the ancient strictures of
common law pleading, where the whole aim was to frame one single
issue. *See* discussion in *Williamson v. Columbia Gas & Electric
Corp.*, 186 F.2d 464, 469 (1950), *cert. denied*, 341 U.S. 921 (1951).
Under this guiding principle of the elaborate writ system "the
phrase 'cause of action' came to have very narrow meaning. If the
theory in the second suit was unavailable under the writ used in the
first suit, the plaintiff had no opportunity to litigate it there and so
plaintiff was not barred by res judicata." *Id.* Such a narrow view of
res judicata, however, is not in keeping with the principle that per-
vades our modern procedure. The central policy "exemplified by the
free permissive joinder of claims, liberal amendment provisions,

and compulsory counterclaims, is that the whole controversy between the parties may and often must be brought before the same court in the same action." *Id.* at 470.

■■ Thus the present trend is to define cause of action collectively to refer to all theories on which relief could be claimed on the basis of the factual transaction in question. *See Morgenroth & Assoc's v. State*, 126 N.H. 266, 490 A.2d 784 (1985); RESTATEMENT (SECOND) OF JUDGMENTS ch. 3 § 24, Comment *a* at 197. Under such an analysis, a subsequent suit based upon the same cause of action as a prior suit is barred "even though the plaintiff is prepared in the second action (1) to present evidence or grounds or theories of the case not presented in the first action, or (2) to seek remedies or forms of relief not demanded in the first action." *Id.* § 25, at 209. We choose to adopt this modern definition of "cause of action" as representative of the prevailing trend. Thus, the term connotes "[f]acts which give rise to one or more relations of right-duty between two or more persons." BLACK'S LAW DICTIONARY 201 (5th ed. 1979). It does not describe a mere label or theory applied to those facts.

Support for this view can be found in earlier decisions of this court. For example, in *Lougee v. Beres*, 113 N.H. 712, 313 A.2d 422 (1973), the plaintiff, after bringing an unsuccessful action for an accounting, brought a second action employing a constructive trust theory. In holding that the second action was barred by res judicata, this court noted:

> "Although the words 'constructive trust' do not appear in [the first] action no other basis for recovery is apparent. . . . If we are to assume that the plaintiff now seeks to recover on the basis of a new theory or remedy, she still cannot escape the bar of the judgment against her in the first action arising out of the same transaction and based upon the same allegations of fact."

*Id.* at 714, 313 A.2d at 423. *Lougee* thus endorses the modern view that "a change in labels is not sufficient to remove the effect of the prior adjudication." *Id.* (quoting *Grace v. Grace*, 394 F.2d 127, 128 (2d Cir. 1968)); *see also Boucher v. Bailey*, 117 N.H. 590, 592, 375 A.2d 1160, 1162 (1977) (endorsing the Second Restatement view).

Applying this liberal approach to the case at bar, we find that Eastern Marine's "claims" for wrongful interference with contractual relations, negligence, wrongful attachment and abuse of process, all of which arose out of the same transaction, are barred by res judicata. We find the reasoning in *Williamson*, 186 F.2d at 469, to be both apposite and persuasive:

"The same witnesses . . . will be necessary in the trial in both cases. No material fact is alleged in action No. 1 that was not alleged in action No. 2 . . . The plaintiff having alleged operative facts which state a cause of action because he tells of defendant's misconduct and his own harm has had his day in court. He does not get another day after the first lawsuit is concluded by giving a different reason than he gave in the first for recovery of damages for the same invasion of his rights."

The fact that the plaintiff's first suit sounded in equity and the second one sought legal relief does not prevent res judicata from operating in this case, where both suits derive from the same factual transaction. A litigant is free to join all claims and seek all forms of relief, whether they be legal or equitable, in one suit. "There is no separate chancery docket in New Hampshire, and legal and equitable issues are routinely joined in one case and heard together." R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 2044, at 495–96 (1984). Whether sounding at law or in equity, "[c]onflicting claims flowing from a common source should be determined in a single action, thus avoiding vexatious litigation and conflicting judgments." *Boucher v. Bailey supra.*

Thus, adopting the Restatement view, we hold that the plaintiff's second suit is barred by res judicata, notwithstanding the fact that it requests relief based upon different theories than those raised in the first suit. "That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories . . . would call for different measures of liability or different kinds of relief." RESTATEMENT (SECOND) OF JUDGMENTS ch. 3 § 24, Comment *c* at 200.

In *Morency v. Plourde*, 96 N.H. 344, 76 A.2d 791 (1950), this court held that the use of equity to preserve the status quo is not *necessarily* a bar to a *pending* law action for damages formerly suffered. In *Morency*, the plaintiff brought an action at law because his apartment was without heat, electricity or water. *Id.* at 345, 76 A.2d at 791. While that proceeding was in progress, the plaintiff also requested an injunction *pendente lite* to compel the defendant landlord to provide him with utilities during the course of the proceedings. After the trial court granted the injunctive relief, the defendant attempted to assert res judicata as a bar to the maintenance of the plaintiff's pending legal action. This court held that res judicata does not operate under such circumstances. *Id.*, 76 A.2d at 792.

*Morency,* however, has no application in the instant case. Here, the two actions were not pending simultaneously. Nor did Eastern Marine's first suit seek a mere injunction *pendente lite.* Rather, Eastern Marine asked the court to make a ruling of law as to the validity of the notices of mechanic's lien and account and to cancel and discharge the notices. Eastern Marine also requested attorneys' fees and costs, and for "such relief as [is] just and fair." This could include monetary damages.

■ We reject the plaintiff's argument that its legal claims were not "ripe" at the time it brought its first suit and that res judicata should therefore not bar the second suit. Contrary to the plaintiff's contention that its legal claims became ripe only *after* the superior court ruled on its equitable claims, the legal claims became ripe or accrued as soon as the defendant served the notices and the plaintiff began to suffer its alleged damages. *See Premium Management Inc. v. Walker,* 648 F.2d 778, 781 (1st Cir. 1981) (the general rule in tort actions is that accrual dates from the time the damages accrued) (discussing New Hampshire law).

■ We also reject the plaintiff's argument that res judicata should not bar its second suit because the first suit was brought on an "emergency basis." In view of the two-week period between the time First Southern served the notices of mechanic's lien and the time Eastern Marine filed suit, the four-month period during which the first suit was litigated, the pretrial discovery that was conducted by both parties, and the three separate hearings that were held on Eastern Marine's requests for temporary relief, permanent relief and attorneys' fees, this argument is devoid of merit. Because we hold that the plaintiff's second suit is barred by res judicata, we do not reach the question of whether count III of that suit states a cause of action.

*Affirmed.*

All concurred.