Request of the Senate
No. 89-054

OPINION OF THE JUSTICES

April 19, 1989

The following reply is returned to the Honorable Senate:

The undersigned justices of the Supreme Court submit the following reply to the question presented in your resolution adopted January 11, 1989, and filed in this court on February 6, 1989. Interested parties were permitted to file memoranda with the court until February 23, 1989.

Before answering the precise question presented, we briefly examine RSA chapter 168-A, the Uniform Act on Paternity, in order to understand the full import of the proposed amendment. RSA chapter 168-A provides for the support of a child born out of wedlock by the child's father. The support obligations for a child born out of wedlock are the same as those for a child born in wedlock. RSA 168-A:1; *Joann P. v. Gary W.*, 122 N.H. 104, 105, 441 A.2d 1161, 1162 (1982). To enforce the father's obligation for a child born out of wedlock, however, paternity must first be determined. *Watts v. Watts*, 115 N.H. 186, 188, 337 A.2d 350, 352 (1975); *see* RSA 168-A:2. RSA chapter 168-A allows for the institution of proceedings to determine paternity by "the mother, child, or the public authority chargeable by law with the support of the child" and to enforce the father's liabilities once paternity has been determined. RSA 168-A:2. While other chapters of the New Hampshire Revised Statutes provide mechanisms to ensure support of a child by the child's parents, *see, e.g.*, RSA ch. 161-B (Supp. 1988); RSA ch. 161-C (Supp. 1988); RSA ch. 167, only RSA chapter 168-A authorizes the institution of proceedings to establish paternity. RSA 168-A:12 provides the applicable statute of limitations for the institution of proceedings under the chapter.

The limitations period for proceedings instituted under RSA chapter 168-A has been expanded twice since the chapter first went into effect in 1971. RSA 168-A:12 initially provided for a one-year statute of limitations. In 1977, the section was amended to provide for a two-year statute of limitations. In 1985, the section was amended again to provide that "[n]o proceeding under this chapter shall be maintained unless commenced within 18 years of the date of the birth of the child in question." RSA 168-A:12 (Supp. 1988). Senate Bill 45-FN would amend the section further by adding the following statement: "A proceeding under this chapter may be commenced even though a paternity action was previously filed and dismissed, if such dismissal was based on a statute of limitations of less than 18 years."

In answering the question before us, we assume that the proposed amendment is intended to permit the enforcement of prospective support obligations only. With this assumption in mind, we first address whether Senate Bill 45-FN would violate part I, article 23 of the New Hampshire Constitution which provides that "[r]etrospective laws are highly injurious, oppressive and unjust. No such laws, therefore, should be made, either for decision of civil causes, or the punishment of offenses." This constitutional prohibition has been interpreted to prohibit a law from taking away

or impairing "vested rights, acquired under exisiting laws." *See Woart v. Winnick*, 3 N.H. 473, 479 (1826). We therefore must determine whether the putative father who has obtained a prior judgment which dismissed a paternity suit as untimely under the then-applicable statute of limitations has thereby acquired a vested right which the amendment may not impair.

A putative father who has obtained such a judgment can claim two distinct, though related, defenses to a future paternity action brought against him. First, he can assert that the limitations period for paternity actions which was in effect at the time of the child's birth has run. A putative father who has not obtained a judgment could as well make this assertion. Second, the putative father can assert that he has already obtained a judgment, dismissing the suit for untimeliness, in a paternity action. We will examine each claim to determine whether the putative father has acquired a vested right to assert either defense.

It has long been settled in this State that a "right to assert the statute of limitations as a defense vests once the limitations period has run." *Gould v. Concord Hospital*, 126 N.H. 405, 408, 493 A.2d 1193, 1195–96 (1985) (citing *Rockport v. Walden*, 54 N.H. 167, 173–74 (1874)). Thus, we have previously held that once a limitations period has run, applying a longer limitations period to the same cause of action would operate as an unconstitutional retrospective law. *Gould, supra* at 408, 493 A.2d at 1196. However, if the previous statute of limitations was unconstitutional, it is our opinion that a mere running of the period would not provide a vested right, as least with regard to prospective obligations. "An unconstitutional act is not a law; it binds no one, and protects no one." *Trustees &c. Academy v. Exeter*, 90 N.H. 472, 495, 27 A.2d 569, 586 (1940) (quoting *Huntington v. Worthen*, 120 U.S. 97 101–02 (1887)); *Mertens v. Abbott Labs*, 595 F. Supp. 834, 837 (D.N.H. 1984). In light of the United States Supreme Court decisions in *Mills v. Habluetzel*, 456 U.S. 91 (1982) (striking down a Texas one-year statute of limitations for paternity actions as a denial of equal protection), *Pickett v. Brown*, 462 U.S. 1 (1983) (striking down a Tennessee two-year limitations period for paternity actions as a denial of equal protection), and *Clark v. Jeter*, 108 S. Ct. 1910 (1988) (striking down a Pennsylvania six-year statute of limitations for paternity actions as a denial of equal protection under the Federal Constitution), ·we examine the constitutionality of our prior limitations periods.

■ In determining whether the prior one and two-year limitations periods were unconstitutional, we must determine whether the application of RSA 168-A:12 in its existing and prior versions could be tolled during the minority of the child on whose behalf no support action was begun during the limitations period. *Accord Clark, supra* at 1916 (noting that Pennsylvania tolls most other civil actions during a child's minority); *Pickett, supra* at 6 (noting state court's finding that limitations period governing paternity actions was unique in not being tolled during plaintiff's minority); *Mills, supra* at 96 (noting state court's finding that limitations period governing paternity actions was not tolled during minority). Only if the statute of limitations could not be tolled would its application raise an equal protection concern, because only then would our legislative scheme have given children born out of wedlock a relatively short period of time to seek support compared with children born in wedlock, who are able to seek support throughout their minority. *See generally* RSA ch. 161-B (Supp. 1988); RSA ch. 161-C (Supp. 1988); RSA ch. 167. We conclude that application of the limitations period found in RSA 168-A:12 was and is not subject to being tolled.

To make this determination, we examine the Uniform Act on Paternity initially introduced in 1971. RSA ch. 168-A. The statute itself provides under section 12: *"No proceeding* under this chapter shall be maintained unless commenced within 18 years of the date of birth of the child in question." RSA 168-A:12 (Supp. 1988) (emphasis added). The earlier versions of RSA 168-A:12 similarly began with "No proceeding." Hence, the section is applicable to the mother, child, or public authority providing support.

While our general statute relating to the time to bring personal actions tolls the statute of limitations for such actions during the minority of a child, *see* RSA 508:8, we are of the opinion that the omission from RSA 168-A:12 of any provision for tolling its short limitation period was indicative of a legislative intent that there be no tolling in relation to the unique statutory action to which § 12 related. Although there is no legislative history on the issue of tolling, at the time the Uniform Act on Paternity was enacted in 1971, there were policy reasons that support the view that the failure to provide for tolling was intentional.

First, proving paternity in 1971 was relatively difficult and thus more subject to fraudulent claims. Hence, the legislature could reasonably have decided that the earlier the action was brought, the more likely the testimony of the parties would be accurate and subject to meaningful cross-examination and impeachment, since

memories tend to fade over time. We note, however, that since 1971, blood testing has provided increasingly reliable checks upon testimony by the mother and the putative father as to whether the latter was, in fact, responsible for the birth of the child. In *Little v. Streater*, 452 U.S. 1 (1981), the United States Supreme Court discussed a 1976 report by the American Bar Association and the American Medical Association indicating that blood tests were at that time able to provide over a 90% probability of negating a finding of paternity for erroneously accused men. *Id.* at 7–8; *see also Mills v. Habluetzel*, 456 U.S. at 104 n.2 (O'Connor, J., concurring). By June 1988, in *Clark v. Jeter*, 108 S. Ct. 1910, Justice O'Connor, writing for a unanimous Court, stated that blood tests today could show "a 99.3% probability that Jeter is [the child's] father." *Clark*, 108 S. Ct. at 1912. Thus, blood testing had measurably improved the chances that a particular defendant would not be erroneously accused of paternity.

Second, we conclude that the prior limitations period set forth in the Uniform Act on Paternity were not intended to be tolled because of practical considerations. The father of a child born out of wedlock should shoulder his burden of support as soon after the child's birth as possible. The child born out of wedlock has an immediate need for support from the mother or the State. The need to have the putative father's support obligation determined as shortly after the birth of the child as possible is readily apparent. The Act encouraged a prompt resolution of the issue of the paternity of the child, and tolling the statute of limitations would not serve this practical need to have the father begin as soon as possible to make regular support payments. If tolling of the statute was intended, the father would be faced with the potentiality of a claim for support after the child had reached the age of majority, a claim of such magnitude as to render its collection a practical impossibility.

We thus conclude that the statute of limitations set forth in RSA 168-A:12 was and is not intended to be tolled during the minority of the child. Having thus determined the issue of the tolling of the statute of limitations, the holdings in *Mills, Pickett,* and *Clark* require us to find that the previous limitations periods would be found to violate the Federal Constitution. Whatever justification the State might have provided for the short limitations periods, those periods clearly fail to meet one of the criteria which these decisions require in order for the shorter limitations period to survive equal protection analysis: requiring paternity actions to be brought within one or two years does not provide a reasonable

opportunity to those with an interest in illegitimate children to bring suit on their behalf. *Clark*, 108 S. Ct. at 1915; *Pickett*, 462 U.S. at 12; *Mills*, 456 U.S. at 99. Thus, the mere running of the previous one or two-year limitations period would not give putative fathers a vested right to assert the limitations period as a defense to an action to determine paternity in order to require prospective support payments. We offer no opinion as to whether the putative father could claim a vested right with regard to retrospective support obligations.

▮▮▮▮ Yet the putative father in the situation involved in the proposed amendment can claim more than that the statute of limitations has run. The amendment allows for the commencement of a paternity action previously dismissed for untimeliness based on the running of a statute of limitations. The putative father subject to the proposed amendment has a judgment dismissing an earlier paternity action. This court has recognized that "a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action." *Eastern Marine Const. Corp. v. First Southern Leasing*, 129 N.H. 270, 273, 525 A.2d 709, 711–12 (1987) (citations omitted). Under the doctrine of res judicata, "established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end." *Eastern Marine, supra* at 273, 525 A.2d at 711, "a final judgment on the merits in one suit absolutely bars a subsequent suit involving the same parties, or their privies, as to all matters which were litigated or might have been litigated in the first suit." *Bricker v. Crane*, 118 N.H. 249, 253, 387 A.2d 321, 323 (1978) (citations omitted), *overruled on other grounds, Eastern Marine, supra* at 274, 525 A.2d at 712. Therefore, if the dismissal for untimeliness constitutes a "final judgment on the merits," the putative father would have a defense of res judicata to a paternity action against all parties and privies to the first suit.

▮▮▮▮ We consider a dismissal based on a statute of limitations as a judgment on the merits for purposes of applying res judicata. *See Weeks v. Harriman*, 65 N.H. 91, 18 A. 87 (1888). This conclusion is consistent with the approach adopted by the Restatement (Second) of Judgments, *see* § 19, Reporter's Note to comment *f* (judgment based on statute of limitations "operates as a bar in the jurisdiction in which it is rendered, even if the plaintiff in the second action seeks to change his theory of recovery and to rely on a longer limitations provision"), and the Federal Rules of Civil Procedure, *see* FED. R. CIV. P. 41(b) (unless court specifies otherwise, an involuntary dismissal "other than a dismissal for lack

of jurisdiction, for improper venue, or for failure to join a party . . . operates as an adjudication upon the merits"). It is also our opinion that, although a paternity action may be brought by "the mother, child, or the public authority chargeable by the law with support of the child," RSA 168-A:2, a judgment in a paternity action obtained against one of these parties may be given preclusive effect against all, since action by any one of them asserts the child's claim, or subrogation rights derived therefrom. *See* RSA 161-C:6 (Supp. 1988). Therefore, a putative father who has obtained a judgment based on the running of the statute of limitations has the defense of res judicata. A statute divesting the putative father of this defense therefore would violate the constitutional prohibition against retrospective laws. *See Reed v. City of Springfield,* 758 S.W.2d 138, 149 (Mo. App. 1988) (statute divesting party of collateral estoppel defense violates Missouri Constitution's prohibition against retrospective laws); *Jenckes v. Mercantile National Bank at Dallas,* 407 S.W.2d 260, 265 (Tex. Civ. App. 1966) (statute impairing "legal exemption from demand of other" violates Texas Constitution's prohibition against retrospective laws).

We reach this conclusion recognizing that a support action is different from a tort or contract action where a certain event gives rise to a remedy for the injured party. In a support action, the court establishes the necessary support of the child, considering both the child's needs and the father's ability to pay at that time. *See* RSA 168-A:4. Since the unwed father's support obligation continues during the minority of the child (except in cases where the child is adopted by another individual, becomes emancipated, or is otherwise no longer in need of support), the court may have to adjust the support payments from time to time, as the child's needs or the father's ability to pay change. *See* RSA 168-A:4. In short, a paternity action involves the right of the child born out of wedlock to parental support, which right is ongoing and continually renewing until the child reaches the age of majority. *See State Dept. of Health, Etc. v. West,* 378 So. 2d 1220, 1227 (Fla. 1979).

However, it is our opinion that a final judgment in a paternity action must be accorded res judicata effect whether a party seeks support retrospectively or only prospectively. Although the dollar amount of appropriate support may vary over time, a defendant's continuing obligation to pay such support by reason of paternity is established or not established once and for all time in one proceeding. Although the right to support continues over time, it cannot be said that a new cause of action accrues each day. Thus the res judicata effect of the paternity suit, a prerequisite to the

enforcement of support, must be given preclusive effect in a later suit for paternity, even if the party bringing the later suit seeks only prospective support.

Finally, we note as well that although the earlier judgment dismissing the previous suit relied on an unconstitutional statute of limitations, the putative father could still claim the defense of res judicata, *see Town of Durham v. Cutter,* 121 N.H. 243, 246, 428 A.2d 904, 906 (1981); *Fite v. King,* 718 S.W.2d 345, 347 (Tex. App. 1986); *Matter of Gowan v. Tully,* 45 N.Y.2d 32, 36–37, 379 N.E.2d 177, 179–80, 407 N.Y.S.2d 650, 652–53 (1978), and have a vested right in the judgment. "In civil actions, res judicata acts to preclude relitigation of an issue even when the statute under which a court rendered its decree is later found to be unconstitutional." *Town of Durham v. Cutter supra.* A judgment validly issued remains in effect until successfully challenged on appeal.

In conclusion, it is our opinion that since the proposed amendment would impair the putative father's right to assert res judicata as a defense, the proposed amendment would violate part I, article 23 of our Constitution.

We next inquire whether the amendment would violate article I, section 10 of the United States Constitution. It is our opinion that it does not. Article I, section 10 states in part that "[n]o State shall . . . pass any . . . ex post facto law." From "earliest times" the United States Supreme Court has interpreted this section to "forbid[ ] . . . penal legislation which imposes or increases *criminal punishment* for conduct lawful previous to its enactment." *Harisiades v. Shaughnessy,* 342 U.S. 580, 594 (1952) (emphasis added); *see* TRIBE, AMERICAN CONSTITUTIONAL LAW §§ 10-2, 10-3 (2d ed. 1988). Since a paternity action under RSA chapter 168-A is civil, rather than criminal, in nature, *see* DOUGLAS, 3 NEW HAMPSHIRE PRACTICE, FAMILY LAW § 92, at 81 (1982), the prohibition on *ex post facto* laws is inapplicable. *See Harisiades supra.*

The transferred question asks whether SB 45-FN violates any other provisions of either the United States or the New Hampshire Constitution. We respectfully decline to answer this question. "In view of the generality of this question we do not deem it within our province to speculate upon whether other constitutional issues might be raised." *Opinion of the Justices,* 101 N.H. 518, 522–23, 131 A.2d 818, 821 (1957).

In conclusion, in our opinion the proposed amendment would violate part I, article 23 of the State Constitution. It would not violate article I, section 10 of the Federal Constitution. Therefore, we answer the transferred question in the affirmative.

DAVID A. BROCK
WILLIAM F. BATCHELDER
DAVID H. SOUTER
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III

April 19, 1989

*Jeffrey R. Howard*, acting attorney general (*David S. Peck*, assistant attorney general, on the memorandum), filed a memorandum supporting the constitutionality of Senate Bill 45-FN.