Burgess v. UNH                          CV-94-338-JD   03/28/95

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


William J. Burgess

        v.                                Civil No. 94-338-JD

Board of Trustees, Univ.
of New Hampshire, et al.


O R D E R


The plaintiff, William J. Burgess, brings this pro se action against the Board of Trustees, University System of New Hampshire ("USNH") and three University of New Hampshire ("UNH") professors, Neil B. Niman, Lawrence W. O'Connell, and Robert C. Puth, to recover losses related to his withdrawal from the UNH Whittemore School of Business and Economics Master of Business Administration ("MBA") program.[1]

The plaintiff alleges the defendants forced him to leave the MBA program in violation of the constitution and common law.  The plaintiff requests monetary damages and injunctive relief,

_____

[1]The complaint does not name the State of New Hampshire as a defendant.  However, the complaint does explicitly and implicitly refer to the conduct and potential liability of the state and various public officials.  See Complaint at ¶¶ 6-8.  To the extent the plaintiff intends to name New Hampshire as a party, the court dismisses all such claims against the state as barred by the Eleventh Amendment.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985); U.S. Const. amend. XI.

including an order requiring the defendants to reevaluate his student status and readmit him to the MBA program.

Jurisdiction is based on 28 U.S.C.A. §§ 1331 and 1332 (West 1993). Currently before the court is the defendants' motion to dismiss (document no. 10) which is treated as motion for summary judgment under Rule 56. See discussion infra pp. 12-14.

Background

The plaintiff was enrolled in the MBA program during the 1990-91 academic year. Complaint at ¶ 18. On July 2, 1991, George Abraham, director of graduate and executive programs at UNH, met with the plaintiff to discuss his substandard academic performance in two classes, Management Organization and Applied Macroeconomics. Id. at ¶ 19. The plaintiff was given the option to withdraw from the MBA program or face expulsion once final grades were submitted by the faculty. Id. The plaintiff withdrew from the MBA program that same day. Id. Since that time the plaintiff has challenged UNH policies and practices through a variety of administrative and judicial proceedings, each time alleging misconduct by the university, its faculty, administration and, more recently, elected officials. The court recites the following summary of the prior proceedings in a light most favorable to the plaintiff.

2

I.   Internal Reviews and Appeals of the Plaintiff's Grievances

A. Disputes Involving the Plaintiff's Grades

In July 1991, the plaintiff submitted written requests to his Management Organization instructor, Rita Weathersby, and his Applied Macroeconomics instructor, Niman, for explanations of why he received his substandard grades in those classes.  Complaint at ¶¶ 20-22.  In an August 15, 1991, letter Weathersby provided the plaintiff with his group participation grade, id. at ¶ 30, and in a subsequent letter wrote that she would no longer discuss matters concerning the plaintiff's grade in her class.  Id. at ¶ 35.  In an August 20, 1991, letter Niman wrote that he had already given the plaintiff a verbal explanation of his grade. Id. at ¶ 34.[2]

On August 30, 1991, the plaintiff requested an appeal of his Management Organization grade.  Id. at ¶ 39.  In an October 25, 1991, letter Harry J. Richards, associate dean of the graduate school, acknowledged a grading irregularity in the Management Organization class and indicated that the plaintiff's grade in that course would be increased to a B+.  Id. at ¶ 50.

_____

[2]The plaintiff continued to write letters to his former professors for at least two more months before directing his efforts exclusively to the university administration. E.g., Complaint at ¶ 37.

3

On October 28, 1991, the plaintiff again wrote to Richards, this time seeking appeal of his grade in the Applied Macroeconomics course. Id. at ¶ 52. In November 1991, Richards replied that, based on a review conducted according to the grading appeal process, he found no basis to change the plaintiff's grade. Id. at ¶ 54. Richards also enclosed a memorandum from Puth, who headed the appeal process, which stated that the plaintiff's performance in Applied Macroeconomics was substantially below that of his classmates. Id.

On December 31, 1991, the plaintiff, seeking to overturn the associate dean's refusal to change his grade, wrote to Dean Lyndon Goodridge to initiate the final step of the UNH appeal process. Id. at ¶ 56 (letter also asserted "there's a collective conscious [sic] at UNH that has decided that damage to me is more acceptable than facing the problem and its repercussions."). On March 13, 1992, Goodridge informed the plaintiff by letter that, based on discussions with Puth, he had determined that the initial grade review had been properly conducted and that the matter should remain closed. Id. at ¶ 68.

On April 8, 1992, the plaintiff wrote to UNH President Dale F. Nitzschke, asking him to intervene in the dispute concerning the Applied Macroeconomics grade. Id. at ¶ 73. On April 14, 1992, Nitzschke wrote back that he would look into whether the

4

appeal review was conducted properly. Id. at ¶ 75. In an April 29, 1992, letter to the plaintiff, Nitzschke wrote that he found the appeal was processed properly. Id. at ¶ 78.

B.  Disputes Involving UNH's Refusal to Re-admit the Plaintiff into the MBA Program

On July 31, 1991, the plaintiff wrote to the UNH graduate programs office to rescind his withdrawal from the MBA program. Complaint at ¶ 25. In response Richards wrote that the plaintiff would not be permitted to rescind his withdrawal, but could apply for readmission. Id. at ¶ 29. On August 12, 1991, the plaintiff applied for readmission to UNH. Id. at ¶ 31. In a September 3, 1991, letter Richards informed the plaintiff that his application for readmission to the MBA program had been denied. Id. at ¶ 40.

On March 17, 1992, the plaintiff again wrote to Richards to request an appeal of the denial of his application for readmission. Id. at ¶ 69. In a March 24, 1992, letter Richards wrote that the dean would assemble a five-person committee to consider his appeal and decide whether to grant readmission. Id. at ¶ 70. In a May 5, 1992, letter Raymond L. Erickson, dean of the graduate school, notified the plaintiff that he would not be readmitted to the MBA program. Id. at ¶ 81. Erickson appended to his letter a memorandum by O'Connell explaining the readmission appeal process and that, following its review, the

5

committee had voted unanimously to deny the plaintiff readmission.  Id.


## II.  State Court Proceedings

### A.  The First Lawsuit

On May 8, 1992, the plaintiff filed a small claims lawsuit against UNH in Durham District Court seeking a refund of the $1,474 he paid as tuition and expenses for the Applied Macro-economics course.  Complaint at ¶ 84.  On June 12, 1992, the Durham District Court (Shaheen, J.) conducted a trial and entered judgment for UNH.  Id. at ¶ 89.  However, because no record of the proceeding was made as requested by the plaintiff, id. at ¶ 110, the court set a new trial date for September 11, 1992.  Id. at ¶¶ 110, 119.  On September 8, 1992, the plaintiff subpoenaed three witnesses employed by UNH, Nitzschke, Goodridge, and Academic Dean John Freear, to testify at the rescheduled trial. Id. at ¶ 118.  The Durham District Court (Taube, J.) found that the subpoenas were not served in time, id. at ¶¶ 119, 124, and the trial was again rescheduled for September 18, 1992, which, following further delay, took place on October 30, 1992.  Id. at ¶¶ 124, 139.

At the October 1992, trial the Durham District Court (Taube, J.) considered, inter alia, whether the plaintiff was entitled to

6

receive an explanation of his grade in Niman's course; whether the plaintiff received an explanation of his grade in Niman's course; whether more stringent grading standards were applied to the plaintiff than to other students; and whether the grading reviews were conducted consistent with UNH review policies. Plaintiff's Opposition to Motion, Exhibit 17 ("Trial Transcript") at 5-6. The plaintiff himself testified and examined and cross-examined Puth, Goodridge, and Niman. See id. at Index.[3] Both parties submitted testimonial and documentary evidence including the plaintiff's course work, letters to the plaintiff from members of the faculty, and evidence of UNH's grade review process. See id.

On November 3, 1992, the Durham District Court issued an opinion finding that the defendant was entitled to and did receive a grading explanation from Niman. Burgess v. UNH, No. 92-SC-32 slip op. (Durham Dist. Ct. Nov. 3, 1994) (Taube, J.). The court also found that the defendants did not subject the plaintiff's course work to different grading standards. Id. Finally, the court ruled that UNH had conducted its review of the

---

[3]The plaintiff's third subpoenaed witness, Freear, did not attend. However, the court ruled that it could adjudicate the case without hearing testimony from the absent witness. Plaintiff's Opposition to Motion, Exhibit 17 at 8.

7

plaintiff's grades in accordance with the applicable grade review policy.  Id.


B.  The Second Lawsuit

On February 22, 1993, the plaintiff filed a second small claims complaint against UNH in Durham District Court.  Motion to Dismiss at ¶ 4.  This complaint alleged that UNH did not provide the plaintiff with an explanation for the grade he received in the Operations Management course and that UNH had engaged in wrongful conduct during the readmission process.  Id. at ¶ 4, Exhibit 6.

On April 23, 1993, UNH filed a motion to dismiss the second small claims lawsuit on the grounds of res judicata.  Id. at ¶ 7, Exhibit 9.  On July 12, 1993, the Durham District Court granted UNH's motion to dismiss, finding the doctrine of res judicata barred the second lawsuit.  Burgess v. Board of Trustee, Univ. of New Hampshire, No. 93-SC-14, slip op. (Durham Dist. Ct. July 12, 1993) (Taube, J.).   The court stated that,

> [i]n effect, the relationship between the Plaintiff and the University had ended and all critical aspects of it were open to challenge by the Plaintiff prior to the hearing on the first complaint.  For several months after filing, the Court gave him liberal opportunities to amend his complaint and to clarify his concerns with the Defendant.  All of the issues he raises in the present Complaint had matured and involved most of the same witnesses; thus these issues could have been asserted easily in the first complaint.  As the

8

> Plaintiff stated, he raises the same issues regarding
> Defendant's review of his academic performance
> pursuant to its own policies.  It is not fair to ask a
> Defendant to respond repeatedly to different aspects of
> what is the same transaction; and such a practice runs
> contrary to our policy of res judicata, which prohibits
> multiple claims arising out of the same claim or
> controversy.  See Eastern Maine Const. Corp. v. First
> Southern Leasing, 129 N.H. 270 (1987).
>
> Accordingly, the Court grants Defendant's Motion
> to Dismiss and orders that there be no further hearings
> on this matter.

Id. at 2-3.

### C.   The Third Lawsuit

On May 5, 1993, the plaintiff filed a third lawsuit in Durham District Court, this time alleging fraud, conspiracy to defraud, and gross negligence against UNH and USNH.  Motion to Dismiss at ¶ 8, Exhibit 10.  On July 14, 1993, UNH and USNH filed a motion to dismiss the plaintiff's third suit, which the Durham District Court granted on August 12, 1993, again on the grounds of res judicata.  Burgess v. University Sys. of New Hampshire, No. 93-SC-48, slip op. (Durham Dist. Ct. Aug. 12, 1993) (Taube, J.) (expressly adopting res judicata findings of court order dismissing second lawsuit).

### D.   Appeals to the New Hampshire Supreme Court

The plaintiff has filed three separate appeals to the New Hampshire Supreme Court, each seeking reversal of a final judgment of the Durham District Court. See Motion to Dismiss, Exhibit 5 (notice of appeal of first lawsuit); Exhibit 13 (notice of appeal of second lawsuit); Exhibit 15 (notice of appeal of third lawsuit). By order of March 31, 1993, the supreme court declined to hear the appeal of the first case. Burgess v. Nitzschke, No. 92-712, slip op. (N.H. Sup. Ct. March 31, 1993). By order of October 15, 1993, the supreme court consolidated the plaintiff's appeals of the second and third lawsuits and ordered the defendants to show cause why the doctrine of res judicata should bar the plaintiff's second lawsuit with respect to claims based on the denial of readmission to the MBA program. Burgess v. Board of Trustee, No. 93-541, 93-581, slip op. (N.H. Sup. Ct. Oct 15, 1993).

On February 25, 1994, the New Hampshire Supreme Court summarily affirmed the Durham District Court's application of res judicata to bar the plaintiff's second and third lawsuits. Id., slip op. (N.H. Sup. Ct. Feb 25, 1994).

The instant lawsuit followed with this action commencing on June 27, 1994.

Discussion

10

The plaintiff's pro se status requires the court to hold the complaint to a less stringent standard than pleadings drafted by attorneys. Eveland v. Director of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)(per curiam)). Under this forgiving standard, the court treats this case as a civil rights action under 42 U.S.C. § 1983 alleging a violation of the plaintiff's constitutional right to due process. Complaint at ¶¶ 1, 3; see 42 U.S.C.A. § 1983 (West 1994). The court also understands the plaintiff to allege that the defendants engaged in fraud, forgery, breach of contract, breach of fiduciary duty, and defamation. Plaintiff's Complaint at ¶¶ 1-4.[4]

## I.    Conversion to a Motion for Summary Judgment

In lieu of an answer, the defendants have filed a motion to dismiss on the grounds that the plaintiff has already litigated the substance of his claims in prior state court proceedings and, as a result, this lawsuit is barred under the doctrine of res

---

[4]The plaintiff has also articulated other claims which the court cannot readily identify and are understood to be asserted in conjunction with the overall civil rights action under 42 U.S.C. § 1983. E.g., Complaint at ¶ 1 (claim based on UNH "knowingly subjecting plaintiff to a required course assignment 'with no right answers'" and "becoming a partner in collusion and conspiracy through default of action").

11

judicata.  Defendants' Motion to Dismiss at 1; Defendants' Memorandum in Support of Motion at ¶ 18.  In response, the plaintiff argues that he did not have the opportunity to fully and fairly litigate his present claims in the New Hampshire state courts.  See Plaintiff's Objection to Motion at 1-2.

Ordinarily, res judicata is raised as an affirmative defense.  Fed. R. Civ. P. 8(c).  However, rather than file an answer, a defendant may file a motion to dismiss on res judicata grounds where the substantive rights of the parties are not endangered.  Diaz-Buxo v. Trias Monge, 593 F.2d 153, 154 (1st Cir.), cert. denied, 444 U.S. 833 (1979).  "A party may raise a res judicata defense by a Rule 12(b) motion when the defense's existence can be judged on the face of the complaint."  Jones v. Gann, 703 F.2d 513, 515 (11th Cir. 1983).  In the alternative, a party may elect to raise the defense in the context of a motion for summary judgment by "introducing sufficient information into the record to allow the court to judge the validity of the res judicata defense."  Id. at 515.

In some instances the court may, at its own initiative, treat a motion to dismiss as one for summary judgment.  1B James W. Moore, et al., Moore's Federal Practice ¶ 0.408[1] (2d ed. 1994).  The court's authority to covert a motion to dismiss into a motion for summary judgment comes directly from Rule 12(b)(6).

12

Levesque v. Miles, Inc., 816 F. Supp. 61, 62-63 (D.N.H. 1993); see Fed. R. Civ. P. 12(b)(6). Moreover, in a motion to dismiss, if matters outside the pleadings are submitted and not excluded by the court the motion is treated under Rule 56 standards. Id.

"A motion to dismiss is not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed with . . . the district court." Garita Hotel, Ltd. v. Ponce Federal Bank, 958 F.2d 15, 18-19 (1st Cir. 1992). The test for converting a motion to dismiss to a summary judgment is "not whether supplementary materials were filed, but whether the court actually took cognizance of them, or invoked Rule 56, in arriving at its decision." Id. at 19. When the court converts a Rule 12(b)(6) motion into a motion for summary judgment, it must give all parties "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). However,

> [the First] Circuit does not mechanically enforce the requirement of express notice of a district court's intention to convert a Rule 12(b)(6) motion into a motion for summary judgment. Instead, we treat "any error in failing to give express notice as harmless when the opponent has received the affidavit and materials, has had an opportunity to respond to them, and has not controverted their accuracy."

Chaparro-Febus v. International Longshoremen Ass'n, 983 F.2d 325, 332 (1st Cir. 1992) (quoting Moody v. Town of Weymouth, 805 F.2d 30, 31 (1st Cir. 1986)).

13

Both parties have submitted extensive materials outside the pleadings in support of their respective positions on the <u>res judicata</u> issue. Significantly, the plaintiff's objection to the motion to dismiss includes a variety of exhibits, such as past correspondence with the defendants, copies of orders issued by the state court and a transcript of the plaintiff's October 30, 1992, trial before the Durham District Court.[5] The plaintiff's willingness to file materials with this court manifests an understanding of his ability to contest the defendant's motion with legal argument and supporting materials beyond the pleadings, thus obviating the need to the give express notice of court's application of conversion to a motion for summary judgment. <u>See</u> <u>Chaparro-Febus</u>, 983 F.2d at 332 (trial court properly converted motion to dismiss to motion for summary judgment where plaintiff responded to motion as if it were filed under Rule 56). The court converts the defendants' motion to dismiss into a motion for summary judgment under Rule 56.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file,

_____

[5]The copies of the state court orders filed by the defendant have not been certified by the state court nor otherwise authenticated. However, the plaintiff has not challenged the authenticity of the state court records and the court treats them as uncontested evidence of the proceedings they purport to describe.

14

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden is on the moving party to establish the lack of a genuine, material factual issue, and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (citations omitted). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial[,]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)), or suffer the "swing of the summary judgment scythe." Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1561 (1st Cir. 1989). "In this context, `genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party, Anderson, 477 U.S. at 248; `material' means that the fact is one `that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 248).

15

## II. New Hampshire Principles of Res Judicata Govern This Action

By statute, federal courts give full faith and credit and the "same preclusive effect to state court judgments that those judgements would be given in the courts of the State from which the judgments emerged." Kremer v. Chemical Const. Corp., 456 U.S. 461, 466 (1982). The relevant statute provides that

> judicial proceedings of any court of any such State
> . . . shall have the same full faith and credit in
> every court within the United States . . . as they have
> by law or usage in the courts of such State . . . .

28 U.S.C. § 1738 (West 1994); see Kremer, 456 U.S. at 466, n.6. "[I]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see Kremer, 456 U.S. at 466, n.6 ("the federal courts consistently have applied res judicata and collateral estoppel to causes of action and issues decided by state courts."); see also Kyricopoulos v. Town of Orleans, 967 F.2d 14, 16-17 (1st Cir. 1992) (district court applied state law to determine whether federal civil rights claim should be precluded by prior state court criminal proceedings). The court must apply New Hampshire law when determining whether the plaintiff's lawsuit is precluded by his prior state court litigation. Moreover, a litigant may not avoid this application

16

of state law principles of res judicata by styling a subsequent federal lawsuit as a civil rights action under 42 U.S.C. § 1983. Allen v. McCurry, 449 U.S. 90, 97-99 (1980); see Migra, 465 U.S. at 85 (Section 1983 "does not override state preclusion law and guarantee [the plaintiff] a right to proceed to judgment in state court on [his] state claims and then turn to federal court for adjudication of [his] federal claims."); Cuesnongle v. Ramos, 835 F.2d 1486, 1497 n.8 (1st Cir. 1987) ("where a plaintiff neglects to raise federal claim [e.g., 42 U.S.C. § 1983] in a state court action, that plaintiff is estopped from raising the federal claim in federal court subsequent to state court judgment.").

In New Hampshire "a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action." ERG, Inc. v. Barnes, 137 N.H. 186, 191, 624 A.2d 555, 558 (1993) (citing Eastern Marine Const. Corp. v. First Southern Leasing, 129 N.H. 270, 273, 525 A. 2d 709, 711-12 (1987)); see Schwartz v. State Dep't of Revenue Admin., 135 N.H. 470, 474, 606 A.2d 806, 808 (1992) (citing In re Alfred P., 126 N.H. 628, 629, 495 A.2d 1264, 1265 (1985)). "[R]es judicata may be asserted only by a person who was either a party or in privity with a party to the prior action." Sanderson v. Balfour, 109 N.H. 213, 214, 247 A.2d 185, 186 (1968). Conversly, the doctrine may also be invoked by a

17

defendant to bar an action brought by a plaintiff who was a non-party to the original litigation but stood in privity with the original plaintiff.  See Waters v. Hedberg, 126 N.H. 546, 549, 496 A.2d 333, 335 (1985).  Privity applies "where the non-party's interests were in fact represented and protected in the litigation although he was not a formal party to the proceedings."  Id.

The "crucial question in determining whether to apply res judicata or collateral estoppel is always whether the action brought in the second suit constitutes a different cause of action than that alleged in the first suit."  Eastern Marine Const. Corp, 129 N.H. at 274, 525 A.2d at 712; see Shepherd v. Town of Westmoreland, 130 N.H. 542, 544, 543 A.2d 922, 923 (1988).  "The term 'cause of action' embraces all theories on which relief could be claimed arising out of the same factual transaction."  ERG, Inc., 137 N.H. at 191, 624 A.2d at 558; see Eastern Marine Const. Corp., 129 N.H. at 274-75, 525 A.2d at 712 (cause of action is the "right to recover, regardless of the theory of recovery").  Applying this standard, New Hampshire courts have consistently barred lawsuits found to be "closely related" to an earlier action, even where the subsequent action is advanced under a separate legal theory.  Shepherd, 130 N.H. at 544, 543 A.2d at 923; see Eastern Marine Const. Corp., 129 N.H.

18

at 275, 525 A.2d at 712 ("a change in labels is not sufficient to remove the effect of the prior adjudication.") (quoting <u>Lougee v. Beres</u>, 113 N.H. 712, 714, 313 A.2d 422, 423 (1973)). Thus, a subsequent suit related to the same cause of action as an earlier action is precluded even where the plaintiff intends to (1) "present evidence or grounds or theories of the case not presented in the first action," or (2) "seek remedies or forms of relief not demanded in the first action." <u>Eastern Marine Const. Corp.</u>, 129 N.H. at 275, 525 A.2d at 712 (citing Restatement (Second) of Judgments ch. 3 § 25, at 209).

## III. Final Judgment in State Court

The defendants assert that the present dispute has been conclusively resolved by a final judgment on the merits entered by a competent state court. Defendants' Memorandum in Support of Motion at ¶¶ 2, 4. The defendants have submitted copies of the state court decisions as evidence of their prior adjudication. <u>Id.</u>, Exhibits 4, 11, 14, 16, 18. The plaintiff has not disputed that his prior lawsuits were resolved on their merits by a final state court judgment. <u>See</u> Plaintiff's Opposition to Motion at 1-9.

The Durham District Court heard the plaintiff's original lawsuit and entered judgment for UNH. <u>See</u> Trial Transcript. The

19

New Hampshire Supreme Court denied the plaintiff's petition for a writ of certiorari. Defendants' Memorandum in Support of Motion, Exhibit 8. Two additional attempts by the plaintiff to resurrect the dispute with UNH in the form of small claims lawsuits were dismissed by the district court. The plaintiff again appealed to the supreme court, which affirmed the district court's rulings. The court finds that the plaintiff's prior state court action against the defendants has been resolved by a final judgment on the merits entered by a court of competent jurisdiction.[6]

---

[6]The plaintiff also argues that the Durham District Court violated his due process rights by, inter alia, failing to respond to a letter asking "what the consequences would be if I were to withdraw this complaint?" Plaintiff's Objection to Motion to Dismiss at ¶ 7. The argument does not undermine the court's conclusion that the first lawsuit was resolved by a final judgment on the merits by a competent court. First, the plaintiff unsuccessfully raised the argument before the state supreme court. See Defendant's Motion to Dismiss, Exhibit 5 at ¶ 16 (notice of appeal of first lawsuit). Second, the plaintiff has not disputed the jurisdictional competency of either the state district court or the state supreme court. See Complaint. Third, to the extent the plaintiff argues that the rulings or conduct of the state courts violated federal substantive or procedural law, the proper method of judicial review would be to appeal the state supreme court's rulings to the United States Supreme Court. E.g., District of Columbia Court of Appeals v. Feldman, 103 S. Ct. 1303, 1311, 1315 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in this [United States Supreme] Court.").

20

IV.   Identity of Parties

The defendants claim they share "sufficient identicality" with the parties named as defendants in the prior state court litigation to establish privity under New Hampshire's doctrine of res judicata.  See Defendant's Memorandum in Support of Motion at ¶ 17.  Niman, Puth, and O'Connell, although not parties to the earlier lawsuits, claim that their interests were represented through their employer, UNH, who was a named party in the state court proceedings.  Id.  Furthermore, USNH, a named party in this lawsuit, was also a named party in the third lawsuit filed by the plaintiff in state district court.  See id.  The plaintiff is the same in all cases.

The focus of the plaintiff's claims in state court was that he suffered harm resulting from UNH's procedural and substantive irregularities in the grading and readmission processes.  The various administrative reviews and appeals were conducted by UNH officials, including the faculty members named in the present case, Niman, Puth, and O'Connell.  Moreover, the plaintiff concedes that UNH is organized as part of USNH.  Id., Exhibit 15. Thus, in the state court proceedings UNH represented and protected the interests of the current defendants: USNH, its Board of Trustees, and its professors, Puth, Niman, and O'Connell.  The court finds that there is sufficient privity

21

between the defendants named in this case and those named in the prior state court litigation to allow each of the current defendants to invoke the res judicata defense against the plaintiff.

V.    Identity of Causes of Action

The defendants next allege that the plaintiff's current causes of action are sufficiently identical to the causes of action that were or could have been litigated in the state court proceedings.  Defendants' Memorandum in Support of Motion at ¶ 16.  The plaintiff has not explicitly or impliedly challenged the defendant's allegations in his objection to the motion to dismiss.  See Plaintiff's Opposition to Motion to Dismiss at 1-9.

A.    Claims That Have Already Been Litigated

In his present complaint, the plaintiff alleges that defendants USNH and Niman engaged in discrimination and fraud regarding the grading of the plaintiff's course work. Plaintiff's Complaint at ¶¶ 1, 2.  The plaintiff next claims that the defendant USNH failed to correct the grading discrimination and fraud.  Id. at ¶ 1.  The plaintiff further alleges that defendant USNH breached a contract by failing to review the grading process and breached its fiduciary duty by failing to

22

enforce university policies.  <u>Id.</u>  The plaintiff also alleges that defendant O'Connell committed forgery during the readmission process.  <u>Id.</u> at ¶ 3.

In each claim the plaintiff seeks to recover for harms resulting from alleged procedural and substantive irregularities in the grading and readmission processes under theories of fraud, discrimination, and violation of the UNH grade review policy. The court finds that the federal claims are substantially similar to those unsuccessfully asserted under slightly different phraseology before the state court.  Indeed, there can be no question that this lawsuit, at least with respect to the claims of fraud and wrongful conduct in the denial of readmission, is barred under New Hampshire law given the earlier rulings by the state district court, later affirmed by the state supreme court, that principles of <u>res</u> <u>judicata</u> militate dismissal of the plaintiff's claims.  The court finds that because the claims asserted in the present case are substantially the same as those presented, litigated and adjudicated by the state court, they cannot be re-litigated in this or any other federal court action.

B.   Claims That Could Have Been Litigated

The plaintiff has also alleged that the defendant USNH violated his Fourteenth Amendment right to due process by refusing to reinstate his status in the MBA program, by failing to grant him an opportunity to be heard or be present at a readmission hearing, and by applying an arbitrary and capricious grade review process to his detriment.  Complaint at ¶ 1.  The plaintiff further alleges that defendant O'Connell violated the Fourteenth Amendment by negligently conducting the plaintiff's readmission review, id. at ¶ 3, and that USNH tortiously converted the plaintiff's final exam papers.  Id. at ¶ 1.  And, in two final variations of a now familiar theme, the plaintiff alleges that defendant Puth defamed his character in the course of the grade review process, id. at ¶ 4, and that all the named defendants are liable for the tort of education malpractice.  Id. at ¶ 5.

The plaintiff's due process, conversion, defamation, and educational malpractice claims against the defendants are based upon the same cause of action as his original state district court claims because they "aris[e] out of the same factual transaction[s]" and occurrences, namely the series of events surrounding his departure from the MBA program.  See ERG, Inc., 137 N.H. at 191, 624 A.2d at 558.  To the extent that the

24

plaintiff has articulated claims that are legally distinct from those unsuccessfully asserted before the state courts, such as a federal civil rights claim under 42 U.S.C. § 1983, such claims could have been asserted at that time and, thus, also must be barred under res judicata. The plaintiff may not proceed with his due process, conversion, defamation and educational malpractice claims in this or any other federal court proceeding.

The plaintiff has enjoyed an abundance of process, both administrative and judicial, in what he has termed his "3-year effort in pursuit of justice." Complaint at 28, ¶ 4. However, under New Hampshire law "the doctrine of res judicata . . . has been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end." Eastern Marine Const. Corp., 129 N.H. at 270, 525 A.2d at 712 (emphasis supplied). The plaintiff's dispute with the University of New Hampshire and its faculty and administration, has reached such a point. The court rules that this lawsuit is barred by New Hampshire principles of res judicata.[7]

---

[7]The plaintiff should be aware that continued attempts to re-litigate this dispute may result in sanctions as pro se litigants are bound by the procedural and substantive rules of law, including the provisions of Rule 11. E.g., Hoover v. Gershman Inv. Corp., 774 F. Supp. 60, 64-65 (D. Mass. 1991) (citing Lefebvre v. C.I.R., 830 F.2d 417, 419 (1st Cir. 1987); Fed. R. Civ. P. 11, Notes of Advisory Committee on 1987 Amendment). Specifically, where "a pro se litigant attempts to 're-hash' claims that have already been litigated in prior

25

<u>Conclusion</u>

The court has converted the defendants' motion to dismiss (document no. 10) into a motion for summary judgment under Rule 56. The court finds that, even under the indulgent review accorded pro se litigants, the plaintiff's claims are barred by New Hampshire principles of <u>res</u> <u>judicata</u>. The motion to dismiss is granted and all other pending motions are moot. The clerk is ordered to close this case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

March 27, 1995

cc:  William J. Burgess, pro se
     Ronald F. Rodgers, Esquire

_____

actions, Rule 11 sanctions are appropriate, and indeed are required if the pleading is frivolous." <u>Amsden v. Moran</u>, No. 88-151-SD, slip op. at 6 (D.N.H. July 18, 1991) (citations omitted).